UNITED STATES ET AL. *v.* CORRICK ET AL.

No. 656. Argued April 6, 1936.—Decided May 18, 1936.

*Assistant Attorney General Dickinson,* with whom *Solicitor General Reed* and *Messrs. Wendell Berge* and *G. N. Dagger* were on the brief, for appellants.

*Mr. George I. Haight,* with whom *Messrs. John S. Boyd* and *M. K. Hobbs* were on the brief, for appellees.

MR. JUSTICE ROBERTS. delivered the opinion of the Court.

This is an appeal from a decree of a specially constituted district court awarding an interlocutory injunction against the Secretary of Agriculture and others restraining them from prosecuting the appellees, operators of market agencies at the Chicago stockyards, for violation of the Packers and Stockyards Act, 1921.[1]

The appellees are, for the most part, the same persons and corporations as the appellants in No. 655, *Acker* v. *United States, ante,* p. 426. While that case was pending on appeal to this court, and the rates therein prescribed by order of the Secretary of Agriculture were suspended until final determination respecting their validity, the appellees prepared and posted, on October 19, 1935, a schedule of rates for market services at the Chicago

---

[1] 42 Stat. 159; U. S. C. Tit. 7, Chap. 9.

stockyards to become effective November 1, 1935. These rates were, in most instances, higher than those prescribed by the Secretary's orders of January 8 and March 12, 1934. On the same day the appellees tendered the schedule to the Secretary for filing. He declined to receive it, assigning as reasons for his refusal that once rates are fixed by him no change therein may be made except by his order or by action of a court of competent jurisdiction and that litigation was then pending challenging the validity of his outstanding orders. Thereupon the appellees filed their bill in the district court reciting the course of the Secretary's proceedings referred to in No. 655, the orders made, and the suit to restrain their enforcement. The pleading asserts that the orders were based on data for the years 1931 and 1932; that, subsequently to promulgation of the orders, conditions had so changed that to prevent destruction of their business the appellees were compelled to adopt a new schedule of charges; it recites the Secretary's refusal to file the new schedule and alleges that the refusal was a violation of his duty under the act; it charges that his refusal was of no effect since his only power in the premises was to file the schedule and, if he believed the rates named therein unjust, unreasonable, or discriminatory, to suspend them, pursuant to the provisions of the act, and, after hearing, fix reasonable and nondiscriminatory rates. The bill alleges that the schedule of October 19, 1935, became effective November 1, 1935, and that if appellees failed to conform thereto they would incur heavy penalties while, on the other hand, the Secretary was threatening to prosecute them unless they adhered to the rates prescribed by his orders of January 8 and March 12, 1934. After a hearing upon the bill and a supporting affidavit the court granted an injunction.

On appeal from the granting or refusal of an interlocutory injunction our inquiry is limited to the ques-

tion whether the court abused its discretion.[2]   The appellants urge that the action taken constituted such an abuse for the reason that want of jurisdiction is evident upon the face of the bill.   With this contention we agree.

Section 316 of the Packers and Stockyards Act [3] adopts the same procedure for restraining enforcement of or setting aside orders of the Secretary as is provided by law with respect to orders of the Interstate Commerce Commission.   By § 1 of the Commerce Court Act [4] jurisdiction was conferred upon the Commerce Court "over all cases . . . brought to enjoin, set aside, annul, or suspend in whole or in part any order of the Interstate Commerce Commission."   The Urgent Deficiencies Act of October 22, 1913,[5] transferred the jurisdiction of the Commerce Court to the district courts and provided that such cases should be heard by three judges.   The words of the statute exclude a mere refusal to act from the section conferring jurisdiction, and this court has accordingly held that an order negative in form and substance is not within the relief accorded.[6]   It is clear that

---

[2] *Farrington* v. *Tokushige*, 273 U. S. 284, 290; *United Fuel Gas Co.* v. *Public Service Comm'n*, 278 U. S. 322, 326; *Alabama* v. *United States*, 279 U. S. 229, 230; *National Fire Ins. Co.* v. *Thompson*, 281 U. S. 331, 338.

[3] 42 Stat. 168.   U. S. C. Tit. 7, § 217: ". . . the provisions of all laws relating to the suspending or restraining the enforcement, operation, or execution of, or the setting aside in whole or in part the orders of the Interstate Commerce Commission, are made applicable to the jurisdiction, powers, and duties of the Secretary in enforcing the provisions of this title, and to any person subject to the provisions of this title."

[4] c. 309, 36 Stat. 539.

[5] c. 32, 38 Stat. 208, 219; U. S. C., Tit. 28, §§ 41 (8) (27) (28), 47.

[6] *Procter & Gamble* v. *United States*, 225 U. S. 282, 292; *Lehigh Valley R. Co.* v. *United States*, 243 U. S. 412; *United States* v. *Illinois Central R. Co.*, 244 U. S. 82; *United States* v. *Atlanta, B. & C. R. Co.*, 282 U. S. 522; *Standard Oil Co.* v. *United States*, 283 U. S. 235, 238.

the instant bill was not one to set aside or suspend any order of the Secretary. The proceeding brought for that purpose was No. 655, just decided. This suit is to restrain the Secretary and others from instituting prosecution for violations of an order. Its ultimate purpose is to secure a decree affirming the validity and effectiveness of the rate schedule posted by the appellees October 19, 1934. The injunction restrains the defendants from preventing, or attempting to prevent, or from interfering with the appellees in the collection of the rates of charge fixed by the schedule tendered to the Secretary October 19, 1935.

The District Court was without jurisdiction for a further reason. Section 306 of the Packers and Stockyards Act[7] directs that within sixty days after the Secretary shall have given notice that a stockyard falls within the definition of § 302 every market agency at such stockyard shall file with him, and keep open for inspection, schedules of rates and charges for its services. No changes are to be made in the rates so filed and published except after ten days' notice to the Secretary and to the public. Section 310 authorizes an order for investigation and a hearing by the Secretary on complaint, or on his own initiative, as to whether existing rates are unjust, unreasonable, or discriminatory, and empowers him, after such hearing, to "determine and prescribe what will be the just and reasonable rate or charge, or rates or charges, *to be thereafter observed* in such case, or the maximum or minimum, or maximum and minimum, to be charged, and what regulation or practice is or will be just, reasonable, and nondiscriminatory *to be thereafter followed; . . .".*[8] Section 306 prescribes the method of initiating rates upon the act's becoming effective, and of voluntary alteration of them from time to time. But when the Secretary, pur-

---

[7] c. 64, 42 Stat. 164. U. S. C. Tit. 7, § 207.
[8] c. 64, 42 Stat. 166. U. S. C. Tit. 7, § 211.

suant to § 310, orders specified rates thereafter to be charged these become the only lawful rates and so remain until the further order of the Secretary.[9]

The bill shows that the Secretary, after inquiry and full hearing, fixed rates thereafter to be charged by the appellees, and these had not been set aside or enjoined in any appropriate judicial proceeding or been altered by subsequent order of the Secretary. The court was, therefore, without power to enjoin the prosecution of the appellees for charging rates other than those established by the Secretary.

The appellants did not raise the question of jurisdiction at the hearing below. But the lack of jurisdiction of a federal court touching the subject matter of the litigation cannot be waived by the parties, and the district court should, therefore, have declined, *sua sponte*, to proceed in the cause.[10] And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it.[11] While the District Court lacked jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.[12] The decree must, therefore, be reversed and the cause remanded with directions to dismiss the bill.

*Reversed.*

[9] Compare *Arizona Grocery Co.* v. *Atchison, T. & S. F. Ry. Co.,* 284 U. S. 370, 386, 387.

[10] See *Cutler* v. *Rae,* 7 How. 729, 731; *Morris* v. *Gilmer,* 129 U. S. 315, 325; *Minnesota* v. *Northern Securities Co.,* 194 U. S. 48, 62; *Mattingly* v. *Northwestern V. R. Co.,* 158 U. S. 53; *443 Cans* v. *United States,* 226 U. S. 172; *Mitchell* v. *Maurer,* 293 U. S. 237, 244.

[11] *Perez* v. *Fernandez,* 202 U. S. 80, 100; *Stratton* v. *St. Louis S. W. Ry.,* 282 U. S. 10, 13.

[12] *United States* v. *Huckabee,* 16 Wall. 414, 435; *Stickney* v. *Wilt,* 23 Wall. 150, 163; *Gully* v. *Interstate Natural Gas Co.,* 292 U. S. 16, 19.