## NATIONAL GRAIN YEAST CORPORATION v. CITY OF CRYSTAL LAKE.

### No. 8730.

Circuit Court of Appeals, Seventh Circuit.

March 1, 1945.

Rehearing Denied March 27, 1945.

John H. S. Lee, Earle F. Tilley, and A. G. Humphrey, all of Chicago, Ill., for appellant.

Homer D. Dines and Joseph A. Conerty, both of Chicago, Ill., for appellee.

George F. Barrett, Atty. Gen. of Illinois (William C. Wines, Asst. Atty. Gen., of counsel), for George F. Barrett, Attorney General of Illinois, amicus curiae.

Before EVANS and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

We are here reviewing an order which vacated a previously entered temporary restraining order and which also denied plaintiff's application for a preliminary injunction, in a suit brought to restrain defendant from shutting off its storm sewers and thus prevent plaintiff from operating its plant which requires an outlet for waste waters used in its process of yeast making.

Briefly stated, this is the story: Plaintiff filed a verified complaint upon which a restraining order was entered after defendant had filed an affidavit made by its mayor. No answer was filed by the defendant. A temporary restraining order was entered. After oral argument the court made findings without further evidence and refused findings proposed by plaintiff. It then entered an order vacating the restraining order, and refusing plaintiff's motion for a temporary injunction. This appeal followed.

The Facts. Plaintiff is a New Jersey company which manufactures bakers yeast. In 1938 it decided to locate a branch factory in the west and in the vicinity of Chicago because the perishable nature of yeast made its shipment from the east impracticable, save in expensive refrigerator cars. It selected an existing, unused dairy plant in the city of Crystal Lake and entered into negotiations with the officials of that city in regard to its selection of a

situs. It represented that it would employ 35 to 40 persons permanently, and it would spend a substantial sum of money in the city when it began operations.

Plaintiff invested $200,000 in its Crystal Lake plant and equipment, and the equipment is unfit for use in any other type of business.

In the process of making yeast, heat is generated which must be overcome. Water is used as the cooling agent. There is also waste water in the process, which has an objectionable odor. It is over the presence of this objectionable odor and its elimination that differences arise. This problem was made known to defendant before plaintiff located at Crystal Lake. In the treatment of this waste, plaintiff first utilized, at defendant's suggestion, several lagoons located on a seven acre tract outside the city. They proved inadequate, so, under a contract with the city, it discharged the cooling, and waste, waters into the storm sewers of the city.

The contract, first negotiated in January, 1939, was re-executed, November 10, 1939, for a term of five years. The renewal provision, paragraph 11, is the covenant of major importance in this controversy. It provided:

"This Agreement shall extend for a period of five years, and expire five years from the date hereof, but is subject to renewal, *providing conditions are satisfactory to both parties hereto, at the expiration of this Agreement.*"

The City Council, by resolution, has declared that the odors are a nuisance, and that conditions have been unsatisfactory since the beginning of the contract, and that plaintiff has done nothing to abate the nuisance during the existence of the contract.

Plaintiff paints a different picture of the situation and attempts to avoid any culpability. It insists it has done everything within its power to minimize and eradicate the odors incident to the operation of its plant. Its complaint states:

(1) It hired, in November, 1938, two bacteriologists who were authorities on the treatment of industrial waste. It constructed a small plant for use in their ex-perimentations, and plaintiff excavated two large lagoons on a tract of land outside the city. This cost plaintiff large sums of money.

(2) The wastes were treated before being discharged into the storm sewer; the waste thus treated at all times met the purification standards of the Sanitary Water Board of the State of Illinois.

(3) That defendant knew, at the time the contract was made, that science had not perfected a means for entirely eliminating the odor.

(4) On the advice of experts whom plaintiff consulted, it built a "trickling filter" and improvements thereon.

(5) In the course of its research it came upon a so-called closed system, a new and more modern method of removing odor, consisting of two large closed concrete tanks technically called anaerobic digesters; that the construction of such tanks and the apparatus used in connection therewith required a large quantity of steel and materials critical in the war effort.

(6) Plaintiff informed defendant of this new system and its belief that the apparatus would completely dispel the objectionable odors, but defendant, nevertheless, thereafter called a meeting of it Council and passed a resolution whereby it refused to renew its contract "in any event." "That such action by the City embarrassed and *greatly impeded* the plaintiff and prevented it from procuring the approval which the plaintiff could otherwise have obtained, of the Sanitary Water Board of the State of Illinois, for the installation of such closed system, and from obtaining priorities from the War Production Board * * * for critical materials required for the installation of such closed system."

(7) Plaintiff received notice "from the War Food Administration * * * that it would not recommend approval of Plaintiff's priority, without submitting evidence from the proper officials of the City of Crystal Lake disclosing that it would permit the plaintiff to operate after the installation of such equipment."

(8) The city and the Sanitary Board later did join [1] in requesting the issuance

1 The Mayor of Crystal Lake wrote this letter to the War Food Administration, May 11, 1944.

"The National Grain Yeast Corporation, with a plant at Crystal Lake, is contemplating the building of a disposal plant to treat their waste materials, and to produce an effluent which will be non-odorous.

"While there has been some complaint

of the priorities, but the reply of the Federal authorities was "that the problem of the plaintiff was not, in the opinion of the Administration, of sufficient magnitude to warrant the use, *at said time,* of the materials sought in the application."

(9) Plaintiff then requested Washington officials to confer with the city officials, to urge the defendant to permit the plaintiff to continue to use existing facilities until the end of the war, but defendant refused the request thus made.

(10) Plaintiff received the approval of its priority application in July, 1944, with the limitation that it must be made use of prior to October 31, 1944. Plaintiff at once proceeded with bids for the work and was ready to accept them and proceeded with the construction of the closed system, which would take five months, when "Defendant refused to permit Plaintiff to have said time so required to proceed with the construction and to complete the same, and notified the Plaintiff that it was prepared to, and would, close the shut-off valve at the effluent outlet line on November 10, 1944 and would not extend said time; that, as a result of such action, the Plaintiff was not able to proceed to install and complete such closed system as it otherwise would have been able to do; that had the Plaintiff not been prevented by the war conditions and by the action of the Defendant, it would have, prior to November 10, 1944 performed all 'conditions' satisfactory to the Defendant within the provision of Paragraph Eleventh * * *." Plaintiff is manufacturing a product essential to the war effort.

■ Ordinarily, the district court's action on an application for a temporary injunction is well-nigh final. It will be modified or vacated only when it appears there was an abuse of discretion. United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263. However, in this appeal, since the trial court's action was based solely upon the verified complaint and an opposing affidavit, and no oral evidence was offered, we are in the same position as was the district court. Even so, we are, in a sense reviewing the exercise of the trial court's discretion.

■ We are convinced from the record before us that plaintiff did not "wholly fail to treat all of the effluent discharged from its treatment plant so as to prevent any unpleasant odors from arising." It must be, and is, assumed that there are odors and they are obnoxious. As such, they constitute a "condition unsatisfactory" to the City, which would ordinarily justify it in refusing to renew the contract with plaintiff. Also, we must accept the showing that *plaintiff tried to overcome the condition and was hindered in its effort by the defendant.*[2]

Were we looking at paragraph 11 of the contract, disassociated from the circumstances of this case, we might agree that a contract "subject to renewal, providing conditions are satisfactory to both parties hereto" was an unfortunate trouble-provoking clause. At least the word "satisfactory" offers a basis for dispute, and doubtless gave defendant the impression that its right to refuse renewal existed regardless of the reasons (or the prejudices) behind it.

Whether "the satisfaction" is to be judged by the promisee's standards, or by the standards of reasonableness, often depends upon the nature of the subject of the contract—such as a portrait, or, on the other hand, the construction of a building. For cases involving the application of the standard of *reasonableness* of satisfaction as opposed to arbitrariness, see Erikson v. Ward, 266 Ill. 259, 107 N.E. 593, Ann.Cas. 1916B, 497, and Keeler v. Clifford, 165 Ill. 544, 46 N.E. 248, 249. In the former case it was said:

"Where a building contract provides for the construction of a building according to certain plans and specifications prepared by the owner's architect, in a good, work-

<hr>

in the past relative to the offensive odor, it is believed that the proposed treatment plant will eliminate all trouble and the City is willing, and anxious, to co-operate with the yeast corporation in this matter.

"In view of the above it is requested that The National Grain Yeast Corporation be granted the necessary priorities, and release of materials, for the proposed treatment plant.

"Trusting this request will receive favorable action, I am

"Very truly yours, * * *"

[2] Cheney v. Libby, 134 U.S. 68, 10 S. Ct. 498, 33 L.Ed. 818; Van Buren v. Digges, 11 How. 461, 13 L.Ed. 771; Williams v. Bank of United States, 2 Pet. 96, 7 L.Ed. 360; Bank of Columbia v. Hagner, 1 Pet. 455, 7 L.Ed. 219.

manlike and substantial manner, 'to the satisfaction' * * * mean a satisfaction reasonably, and not merely arbitrarily, exercised."

In the latter case, it was said:

"* * * where a contract is required to be done to the satisfaction of one of the parties, the meaning necessarily is that it must be done in a manner satisfactory to the mind of a reasonable man. The plain construction of the contract in this regard is that the work was to be completed in accordance with the contract, in such a manner that appellant, as a reasonable man, ought to be satisfied with it."

Williston on Contracts, Sec. 675A, states the rule thus:

"Where a promise is conditional, expressly or impliedly, on his own satisfaction, he must give fair consideration to the matter. A refusal to examine the promisor's performance, or a rejection of it, not in reality based on its unsatisfactory nature but on fictitious grounds or none at all, will amount to prevention of the condition and excuse it. * * * Frequently, no doubt, on a true interpretation of provisions for satisfactory performance, reasonable satisfaction, * * * of the promisee is all that is required."

Here we have several persuasive factors which give strength to plaintiff's contention in favor of its right to renewal: (1) Plaintiff invested $200,000 on the assumption that it was going to continue indefinitely in business; (2) Defendant before the execution of the contract was cognizant of the problem of odors in the manufacture of yeast, and suggested the possible use of the existing lagoons as a means of elimination of the odors; (3) Defendant wanted the financial benefit which the location of the plant in the City would give it, and encouraged, if it did not induce, the plaintiff to locate there; (4) Plaintiff tried repeatedly to eliminate the odors by scientific research, at great expense to itself.

■ We base our conclusion that plaintiff should be given a temporary injunction largely on defendant's refusal to cooperate with plaintiff. By so doing, it defeated the adoption of the newly discovered method of entirely eliminating the objectionable odors. This refusal to cooperate was arbitrary and bordered on bad faith. It precludes defendant, at least so far as this ruling on this temporary injunction is concerned, from a reliance on noncompliance with a required condition of the contract.

■ The right to renewal was predicated upon a mutual continuance of satisfactory conditions—but if one side was unable to render conditions satisfactory because of the action of the other party, unsupported by reason, the latter should not be permitted to offer the nonperformance of the adversary as a basis for non-renewal.

Our conclusion is based on the showing at this early stage of the litigation. There is necessity for proof in support of the respective assertions to determine final disposition of the suit. But, in the meantime, there is on the one side, real destruction of property, if the injunction be denied while there is no insufferable loss or damage if plaintiff be permitted to continue making bakers yeast—a product found essential to the war effort. Should the actual proof disclose bad faith on the part of the plaintiff, lack of sincere effort to comply with contract provision requiring treatment of the odorous wastes, then defendant's refusal to renew the contract will be sustained.

At this stage of the litigation, however, we cannot say on the incomplete record before us, that plaintiff failed to make the required effort to successfully treat its waste. Rather, there is ample allegation of the numerous endeavors it made to eliminate the odor, and of defendant's lack of cooperation in procuring installation of a process which promised complete, or nearly complete, eradication of the odor.

In reaching this conclusion, we, holding court in Chicago, are aware that life in a large city is accompanied by more noise, more dirt and more odor than we like. We are justified in our efforts to lessen them, just as the citizens and officers of Crystal Lake are justified in their efforts to remove obstacles to health and enjoyable living. This worthy desire, however, is not strengthened, in the opinion of neutrals by angry efforts which defeat rather than promote their objective. Nor can the court, nor should the defendant, ignore the effect of the World War on efforts of parties to comply with contract obligations and requirements.

The extent to which parties may justifiably expect relief in a court of equity upon a showing that the failure to perform was because of inability to secure priorities, etc. due to the War, presents a question

upon which final judicial pronouncement has not been made. See 152 A.L.R. 1447; 151 A.L.R. 1447; 150 A.L.R. 1413; 149 A.L.R. 1447; 148 A.L.R. 1382; 147 A.L.R. 1273; 137 A.L.R. 1199.

It is our belief that courts of equity will not close the door of relief to a party who has diligently and in good faith attempted to complete its contract but who has been wholly or in part prevented from so doing because of the first demands and requirements of the Government in the prosecution of the War.

Plaintiff's obligation in the case before us is of this character.

The order of the District Court is Reversed with directions to proceed in accordance with the views here expressed.

