NATIONAL YEAST CORPORATION v.
CITY OF CRYSTAL LAKE.

No. 9631.

United States Court of Appeals
Seventh Circuit.

Nov. 8, 1948.

Rehearing Denied Dec. 7, 1948.

Homer D. Dines, Joseph A. Conerty and Donovan Y. Erickson, all of Chicago, Ill., for appellant.

Earle F. Tilley, A. G. Humphrey and John H. S. Lee, all of Chicago, Ill., for appellee.

Before SPARKS, Chief Judge, MAJOR, Circuit Judge, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Plaintiff-appellee is engaged in the manufacture of baker's yeast in the City of Crystal Lake, Illinois. By virtue of a contract entered into on November 10, 1939, between the Yeast Company and the City, expiring five years from the date thereof, plaintiff discharged its waste into the storm sewers of the city and continues to do so regardless of the expiration date of the contract. The District Court has awarded the plaintiff an injunction restraining the defendant from closing the shut-off valve in the plaintiff's effluent line between its plant and the storm sewer of the city, and from interfering in any manner with the discharge of the plaintiff's waste into such storm sewer prior to November 10, 1949, except under the special circumstances provided for in the contract. This on the theory that the City acted arbitrarily and unreasonably in its refusal to give effect to a proviso of the contract making it subject to renewal for a further term of five years "providing conditions are satisfactory to both parties." The lower court held that plaintiff's delay in the treatment of its effluent so as to eliminate offensive odors, as provided in the contract, was to be excused on account of the war and the non-cooperative conduct of defendant.

This case was before us in March, 1945 (Reported in 7 Cir., 147 F.2d 711) on an appeal from a refusal of the District Court to grant plaintiff a temporary injunction. For a further statement of the facts reference is made thereto. The decision of the District Court had at that time been made upon the pleadings and an affidavit submitted by defendant, and after a consideration of the facts as disclosed by the pleadings and the affidavit we reversed the decision of the District Court and remanded the cause for a full hearing upon the evidence.

Upon remandment an amended complaint was filed bringing the allegations of fact to date, and the defendant then challenged, for the first time, the jurisdiction of the Court. This challenge was based upon the assertion by the defendant that the Crystal Lake Building Corporation, an Illinois corporation, was a necessary and indispensible party to the proceeding, that its interests were antagonistic to that of the defendant city and if made a party to the proceeding and properly aligned with plaintiff it would have the effect of defeating jurisdiction because there would then be no diversity.

To show the applicability of this contention it is necessary to refer briefly to the contract between the plaintiff and defendant of November 10, 1939. At that time, the Yeast Company being hardpressed for a method of suitable disposition of its effluent, entered into a contract with the city whereby the city agreed to allow the Yeast Company to connect its disposal line to the storm sewer of the city. It was agreed that the plaintiff would treat all waste emptied into such storm sewer so as to eliminate offensive odors and in a manner to meet the approval of the Sanitary Water Board of the State of Illinois; that a shut-off valve would be installed to which the City would have free access for the purpose of shutting off such waste matter in the event of noncompliance and for other emergency reasons, such as a heavy rain storm or an overcharging of the capacity of the sewage system. All paragraphs and provisions of this contract relate to the covenants of the Yeast Company and the City of Crystal Lake with the single exception of paragraph 7. By paragraph 7, the Crystal Lake Building Corporation, at that time the holder of the legal title to the real estate upon which the Yeast Company's plant was situated, together with the Yeast Company, agreed to indemnify the City of Crystal Lake against any damages it might sustain by reason of any claims filed against the City growing out of the discharge of such effluent into the storm sewer of the City, and the Yeast Company and Building Company agreed not to further encumber their plant.

Paragraph 11 of the agreement provided that the agreement would expire in five years but was subject to renewal "providing conditions are satisfactory to both parties hereto at the expiration of this agreement."

The Crystal Lake Building Corporation is something of a figurehead in the entire transaction, being a wholly-owned subsidiary of the Yeast Company, organized for the single purpose of receiving title to the real estate upon which the Yeast Company contemplated the equipment of a plant for the operation of its business. Before the controversy arose between the Yeast Company and the City, and long prior to the institution of the proceedings herein, the Building Corporation had divested itself of such real estate by conveyance to the Yeast Company, and the Yeast Company had subsequently discharged all liens against the property. There of course remained as a barrier to the dissolution of the corporation, the Building Company's contingent liability under paragraph 7 of this contract concerning any possible claims that might be filed against the City for causes of action arising prior to November 10, 1944. It is not contended that any such claims have ever been filed Under these facts, the District Court declined to make the Building Corporation a party to the proceeding, and this question of jurisdiction is now before us for review for the first time.

The City contends that the Building Corporation was an indispensible party for the reason that its obligations under the contract were such that a final decree could not be made without affecting its interests, and that its interests being antagonistic to the City it would if brought in defeat jurisdiction, and cites Shields v. Barrow, 17 How. 130, 58 U.S. 130, 15 L. Ed. 158; City of Indianapolis v. Chase Nat. Bank, 314 U.S. 63, 62 S.Ct. 15, 16, 86 L.Ed. 47, and numerous other decisions of lower courts.

The Chase Nat. Bank case is a most interesting 5-4 decision in which jurisdiction was denied following a contrary holding by this Court. The facts are so different from our own case that its value here is doubtful except for the fundamental principles declared in the majority opinion. The Court there said:

"As is true of many problems in the law, the answer is to be found not in legal learning but in the realities of the record. Though variously expressed in the decisions, the governing principles are clear. To sustain diversity jurisdiction there must exist an 'actual' * * * 'substantial', * * * controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. * * * Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' * * * Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests' * * * exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit', * * * and the 'primary and controlling matter in dispute' * * *."

So here the question of whether the Building Corporation was a necessary party must be determined from "the realities of the record."

There can be no question but that the decree of the Court herein is ineffective to place any additional burden upon the Building Corporation. Its obligation under paragraph 7 of the agreement expired on November 10, 1944, and as asserted by the City it could successfully defend against any claim arising subsequent to that date. Its present contingent liability to respond in damages by reason of suits against the City for acts arising between November 10, 1939 and November 10, 1944 remains unaffected except by any appropriate statute of limitations. Its position seems to have been that of a guarantor or an indemnitor and thus was made a party to the agreement because at that time it held title to the Yeast Company property. This property has since been conveyed to the Yeast Company and the potency of the Building Company as an

indemnitor has ceased to exist, but its contingent liability has not and cannot in the least be affected by the decree herein.

If it is conceded that the effect of the Court's decision herein is to award the plaintiff a renewal of such contract from November 10, 1944 to November 10, 1949 it can, of course, be effective only as between the Yeast Company and the City, but this would in no sense affect the interest of the Building Company. The question of whether the Yeast Company should have upon the entry of the decree herein furnished the City with further sureties for the faithful performance of its contract to indemnify the City for the period from November 10, 1944 to November 10, 1949, was a proper subject for consideration of the Court at the time of the decree herein if it had been presented. If the City in this renewal of its obligation to receive the effluent from the Yeast Company had believed that it was entitled to be further indemnified other than by the obligation of the Yeast Company, we presume it could have so indicated to the trial court and the trial court would undoubtedly have had authority under its equity jurisdiction to have made the injunction order contingent upon the Yeast Company furnishing further security. The surety could have been any person or corporation qualified to act. The fact that the Building Company had for the preceding five years been the indemnitor can make no difference in this respect. A "collision of interests" between the City and the Building Corporation can only arise if and when the City is required to defend a suit for damages growing out of the subject matter of the contract, but there is no collision of interests in the relief sought in this proceeding. It is our judgment that the Building Corporation is neither a necessary nor an indispensible party in this suit and that the District Court correctly determined that it had jurisdiction.

As we have already noted when the case was before us on the former hearing, no evidence had been heard. We there stated:

"Our conclusion is based on the showing at this early stage of the litigation. There is necessity for proof in support of the respective assertions to determine final disposition of the suit."

Upon remandment, the District Court referred the cause to a Special Master who, after extended hearings, found the facts and separately stated his conclusions of law.

Among other things, the Special Master found as follows:

That, in the course of its research (for a method of elimination of odors from its effluent) the Plaintiff came upon a so-called "closed system", a new and more modern method of removing odor, consisting of two large closed concrete tanks, technically called anaerobic digesters; that the construction of such tanks and the apparatus used in connection therewith required a large quantity of steel and materials critical in the War effort.

That, unforeseeable by the parties thereto at the time of the execution of the Contract of November 10, 1939, between the Plaintiff and Defendant, the United States of America subsequently became engaged in wars with foreign enemies and restricted the use of critical materials, which prevented the Plaintiff from obtaining materials necessary for erecting and equipping a plant to eliminate odors from the effluent from its manufacture of yeast.

That the Plaintiff was prevented, wholly or in part, from completing its Contract with the Defendant prior to November 10, 1944, by the wars in which the United States of America was engaged and the restrictions upon the use of critical materials.

That the Defendant failed and refused to cooperate with the Plaintiff in its efforts to eliminate unpleasant odors from the effluent from its manufacture of yeast.

That the failure and refusal of the Defendant to cooperate with the Plaintiff in its efforts to obtain priority permits, hindered and prevented the Plaintiff from obtaining materials and authorization necessary for erecting and equipping a plant to eliminate odors from the effluent from its manufacture of yeast.

That the refusal on the part of the Defendant to cooperate with the Plaintiff in the latter's effort to eliminate unpleasant

odors from the effluent from its manufacture of yeast, wholly or in part, prevented Plaintiff from completing its agreement with the Defendant prior to November 10, 1944.

That the Plaintiff has carried out and performed each term, provision and condition of the Contract with the Defendant, dated November 10, 1939.

That the Plaintiff has eliminated all unpleasant odor from the effluent arising from its manufacture of yeast.

That the Plaintiff, prior to the date upon which it filed its Complaint in the above entitled cause, was the sole owner of the properties in and near Crystal Lake upon which the yeast involved in this case was manufactured and the effluent therefrom treated.

That, neither on the date when the Complaint in the above entitled cause was filed nor thereafter, did the Crystal Lake Building Corporation have any right, title or interest in or to the properties or any part thereof, in and near Crystal Lake in which yeast was manufactured by the Plaintiff and the effluent therefrom treated.

That the manufacture of yeast by the Plaintiff and disposal of the effluent therefrom is not now creating a public nuisance in the City of Crystal Lake.

These Findings of the Special Master were, on hearing, adopted by the District Court as the Findings and Conclusions of the Court. Upon examination of the record we find that such Findings of Fact have substantial support in the evidence and must be accepted. Rule 52 (a) of the Rules of Civil Procedure, 28 U.S.C.A.

The facts thus found were before us on the former appeal only as allegations appearing in the pleadings but have now on hearing of evidence been resolved by the lower Court adversely to defendant. All questions of law now presented and argued could have been presented on the former hearing, and most of them were except the jurisdictional question. The question of jurisdiction being a proper subject for consideration at any time we have herein considered and disposed of the contentions in relation thereto. In reference to the other principal points raised in the briefs and orally argued before the Court our views thereon found expression in our previous opinion written by our former associate, Judge Evans, and we find no occasion to modify or extend the views there expressed.

The decree is affirmed.