CORNELIA G. KENNEDY, Circuit Judge.
The Clerk of the United States Bankruptcy Court for the Northern District of Ohio (the clerk) attempts to appeal from an order of the Honorable George W. White, *605 United States District Judge, Northern District of Ohio, reinstating three deputy clerks of the Bankruptcy Court. The clerk contends that Judge White did not have jurisdiction to entertain the grievances of these deputy clerks.
The factual setting of this case is, briefly, as follows. Janet Matuscak and Paul Rini (grievants) were deputy clerks of the Bankruptcy Court. During February 1984, the court began training certain employees to use a new computer system. The system was designed to automate the process of compiling docket sheets and sending out court notices. Grievants were included among the persons to be trained. During this training period, grievants and two other deputy clerks practiced by typing fictional notices and letters into the system. It was their understanding that nothing they entered into the computer would be mailed out. Due to a clerical mistake in the Washington office of the court, some of the fictional notices, which contained offensive material, were mailed to attorneys and debtors.
Grievants were discharged in May 1984 by the clerk and with the approval of the bankruptcy judges sitting in Cleveland.[1] The reason given by the clerk was “gross neglect of duty and misuse of government property.” The clerk informed grievants that they could request a hearing before the Bankruptcy Court. Initially, grievants requested a hearing by filing grievances with the clerk. Before the matter was set for a hearing before the Bankruptcy Court, grievants withdrew their grievances from the Bankruptcy Court and filed them with the Chief Judge of the United States District Court for the Northern District of Ohio, under a grievance procedure established for the District Court. On May 23, 1984, the Chief Judge assigned the matter to District Judge White.
On June 18, the bankruptcy clerk moved for dismissal of the proceedings based on the District Court’s lack of jurisdiction over Bankruptcy Court grievances. On June 29, 1984, the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549 (1978), expired, and for a brief period of time there were no bankruptcy courts, as such. On the same day, the District Court for the Northern District of Ohio entered an order asserting jurisdiction over the Bankruptcy Court.[2]
On July 10, President Reagan signed into law the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, 98 Stat. 333 (1984), restoring the bankruptcy courts. Meanwhile, on July 10 and 11, Judge White conducted a hearing to consider the instant grievances. On July 11, the clerk again asserted his motion to dismiss for lack of jurisdiction. On July 23, Judge White entered what he termed a “Final Nonappealable Administrative Order,” denying the motion to dismiss and ordering the clerk to reinstate the grievants and place each on six-months probation. Judge White based his order on a finding that, although the grievants had exercised poor judgment, they had good work records and did not cause irreparable damage.
The clerk filed a notice of appeal from the order of Judge White. He contends that the District Court erred when it asserted jurisdiction over the matter and substituted its judgment for that of the clerk with respect to a personnel matter solely within the province of the Bankruptcy Court.
Before considering the merits of the clerk’s appeal, we first must determine whether we have jurisdiction over this matter. The clerk relies on 28 U.S.C. § 1291, which grants this court jurisdiction “of appeals from all final decisions of the district *606 courts.”[3] Grievants contend that because the grievance here is an internal administrative matter of the court, it is not the sort of “final decision” from which Congress intended to permit appeals to the United States courts of appeals.
Whether the decision of the District Judge is within the scope of our power to review by direct appeal is a difficult question. We begin by noting that, as statutory courts, our jurisdiction may not exceed that granted to us by Congress. Wooten v. Bomar, 266 F.2d 27, 28 (6th Cir.1959). Thus, the question for us to decide is whether section 1291 permits review of this sort of matter.
The legislative history of section 1291 provides little guidance. The language of that section has remained substantially the same since the official revision and codification of Title 28 in 1948.[4] The relevant predecessor section, 28 U.S.C. § 225(a) (1940), stated that “[t]he circuit courts of appeal shall have appellate jurisdiction to review by appeal final decisions — First. In the district courts, in all cases save where a direct review of the decision may be had in the Supreme Court under section 845 of this title.” The other three provisions for appellate review of final decisions permitted review in either “all cases” or certain types of cases (depending on the subject matter) from certain district courts (e.g., Hawaii and Puerto Rico). According to the Reviser’s Notes, the new section — section 1291 — “rephrases and simplifies” these and other sections. See H.Rep. No. 308, 80th Cong., 1st Sess. A109 (1947). No mention is made of the omission of “cases” in section 1291, despite the fact that such a word seems to bear upon the courts of appeals’ power to review administrative actions of district courts, and despite the opportunity for interpretational issues to arise with the passage of time.[5] The inescapable conclusion is that the drafters of the statute did not consider the question whether appellate courts could review such administrative actions. The paucity of case law on the question supports that conclusion.
Despite the absence of case law or legislative history, the issue is both important and difficult. If the words “final decisions” are given their full meaning, section 1291 would give the courts of appeals the power to directly review the full litany of administrative decisions made by district courts and district judges acting in their official capacities. These decisions relate to a whole range of matters including personnel, facilities, equipment, supplies, budgeting, accounting, security, rulemaking and public relations. It would strain the meaning of section 1291 to say that a final decision on one of these matters is directly appealable to a court of appeals. Thus we conclude that purely administrative decisions of a district court or district judge may not be appealed under section 1291.
This is not to say that such decisions may not be challenged on the basis that they are contrary to some constitutional, statutory, or common law rule. Indeed, this case involves a challenge to the District Court’s statutory authority to act as it did. Thus, the question we face here is not whether some right has been violated or whether relief is available; rather, the question is what procedural device must the aggrieved party (in this case, the clerk) use in seeking relief.[6] Applying that question to the facts *607 of this case, we must decide whether Judge White’s decision fits within the class of administrative decisions outside the scope of section 1291 review.
In determining whether Judge White’s decision was administrative, we reject the grievants’ suggestion that we rely on Judge White’s characterization of his final order as administrative and nonappealable. Such an approach would be inconsistent with our duty to determine independently whether the district court exceeded its jurisdiction. United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 831, 80 L.Ed. 1263, reh’g denied, 298 U.S. 692, 56 S.Ct. 951, 80 L.Ed. 1410 (1936). The approach that we adopt is to determine, based on the objective facts, whether Judge White was acting in an administrative capacity or whether he was acting in a judicial capacity. See Application of L.B. & W. 4217, 16 Alaska 277, 238 F.2d 163, 165, 166 (9th Cir.1956) (holding that its appellate jurisdiction does not extend to the adjudication of administrative or legislative issues or controversies, but rather only to decisions of a judicial character).
Judge White’s hearing was conducted pursuant to a grievance procedure adopted to govern employees of the United States District Court for the Northern District of Ohio. The grievance procedure permits appeal of a dismissal action by way of petition to the Chief Judge of the District Court. The Chief Judge may designate another judge to determine whether a hearing is required. In this case, the Chief Judge designated Judge White, and Judge White chose to hold a hearing. The clerk repeatedly protested that the District Court did not have jurisdiction over the dismissal of grievants.
A careful examination of the relevant statutory provisions reveals that the District Court was not acting within the scope of its administrative power. Before the District Court. hearing in this case was completed, and well before its decision was announced, President Reagan signed into law the Bankruptcy Amendments and Federal Judgeship Act of 1984, supra. Section 104(a) of . that Act reestablished the bankruptcy courts. One of the provisions of the Act gives the clerk of each bankruptcy court the power to appoint and remove deputy clerks, with the approval of the bankruptcy judges.[7] That section, 28 U.S.C. § 156(b), does not give the district courts any power to review or otherwise interfere with such appointments or removals except, of course, when such actions are challenged in an independent lawsuit alleging some cause of action falling within the subject-matter jurisdiction of the federal district courts. Congress has not given the district courts the power to substitute their judgment for that of the bankruptcy clerks and judges.[8]
The bankruptcy amendments divested the District Court of any supervisory authority it may have had over the hiring *608 and firing of deputy clerks.[9] Thus, at the time of the hearing held by Judge White, and when his decision was made and announced, he was not handling a matter within the scope of the District Court’s administrative powers. It is undisputed that, but for the applicability of an internal administration exception, Judge White’s or: der has all the trappings of a final judicial decision of the United States District Court for the Northern District of Ohio. Judge White was acting as a federal judge deciding a matter for the court. The grievance procedure followed by Judge White is a procedure by which the court exercises its power, under 28 U.S.C. § 751, to approve the removal of its own employees. Although we do not doubt that this matter would be one of internal administration— and hence, nonreviewable under section 1291 — had grievants been deputy clerks of the district court, grievants were not deputy clerks of that court. Because the District Court lacked the power to review grievants’ dismissals in an administrative capacity, the dispute heard by Judge White was a dispute between two outside parties. Judge White’s order, no different in substance from an order that might be issued in a typical wrongful discharge or employment discrimination case, was thus a final nonadministrative judicial decision of the District Court, subject to our review under 28 U.S.C. § 1291.
In light of what we have said above about the power of the District Court to hear grievances of employees of the Bankruptcy Court, our decision as to the “merits” of the clerk’s appeal is obvious. We hold that the District Court acted outside of its jurisdiction in ordering that grievants be reinstated and placed on probation. Before the matter was fully heard and decided, Congress deprived the District Court of any jurisdiction it may have had over the grievances.
Grievants argue that the clerk has waived any objection to the District Court’s application of its grievance procedure to employment disputes in the Bankruptcy Court. In support of their position, grievants cite one incident where the clerk acquiesced in the handling of a grievance that was filed in the District Court. The clerk contends that in that case — the only one cited to prove waiver — the matter was eventually referred to Chief Bankruptcy Judge H. F. White, of the United States Bankruptcy Court for the Northern District of Ohio, who declared that he was hearing the matter pursuant to section 233 of the Bankruptcy Reform Act of 1978, formerly codified at 28 U.S.C. § 771, see supra, which, he noted, left the ultimate decision in the hands of the Bankruptcy Court. See In re: Personnel Action— Faye Bernstein, slip op. at 2 (Bankr.N.D. Ohio Dec. 8, 1983). Even if there were stronger evidence than this of “waiver,” that defense has no applicability in this case. We are asked to decide whether the District Court has assumed more power than Congress has afforded it. If Congress has not given the District Court the power to hear the grievances, then the court acted outside of its subject-matter jurisdiction. It is well established that parties cannot somehow waive jurisdictional objections, nor can they consent to the jurisdiction of a court when that court lacks jurisdiction over the subject matter of their dispute. See Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. *609 2099, 2104, 72 L.Ed.2d 492 (1982).[10] Thus, we are duty-bound to decide whether the District Court exceeded its statutory authority in entertaining the grievances of Rini and Matuscak and in ordering their reinstatement. For the reasons stated above, we find that it did.
We reverse the decision of the District Court and direct it to vacate its order. No costs are awarded.

. The two other deputy clerks who typed fictional material were also discharged. One withdrew her grievance when the matter reached Judge White. The other left employment with the Bankruptcy Court before this Court heard oral argument, thus rendering the clerk’s appeal as to her moot.

. During the hiatus the Bankruptcy Court operated under Order No. 83, June 29, 1984, incorporating a resolution of the Executive Committee of the Judicial Conference of the United States.

. Section 1291 provides:
The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except'where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

. The original § 1291 did not contain the references to the Federal Circuit.

. The section's origin can be traced to the Circuit Court of Appeals Act, passed in 1891, c. 517, 26 Stat. 828.

. In this case, there are at least three avenues the clerk might have tried: (1) file a lawsuit in federal court seeking injunctive relief; (2) peti *607 tion the court of appeals (or the district court) for a writ of mandamus or prohibition; and (3) directly appeal the decision of the district judge. The clerk chose the last approach. We express no opinion as to the wisdom or legitimacy of the other two approaches.

. See 28 U.S.C. § 156, which provides;
(b) Upon certification to the judicial council of the circuit involved and to the Director of the Administrative Office of the United States Courts that the number of cases and proceedings pending within the jurisdiction under section 1334 of this title within a judicial district so warrants, the bankruptcy judges for such district may appoint an individual to serve as clerk of such bankruptcy court. The clerk may appoint, with the approval of such bankruptcy judges, and in such number as may be approved by the Director, necessary deputies, and may remove such deputies with the approval of such bankruptcy judges.

. Nor can such a power be implied from the Act. In several other sections of the Act, the district courts are given a substantial role in the management of bankruptcy business. See, e.g., 28 U.S.C. §§ 151, 154(a), 157(a), 157(d). Section 156(b) contains no such reference to the district courts with respect to the hiring and firing of deputy clerks. If Congress had wanted the district courts to be involved in that process, it surely would have said so explicitly, in light of its careful delineation of the role of the district courts in other bankruptcy court matters.

. Even if the relevant date for determining supervisory authority was the date of discharge or the date of grievants’ request for a hearing, our conclusion would be the same. Those events preceded the expiration of the Bankruptcy Reform Act of 1978. Thus, at those times, the relevant statutory provision was 28 U.S.C. § 771(b), which provided:
The clerk may appoint, with the approval of the [bankruptcy] court, necessary deputies, clerical assistants, and employees in such number as may be approved by the Director of the Administrative Office of the United States Courts. Such deputies, clerical assistants, and employees shall be subject to removal only by the clerk with the approval of the court. If there is no clerk, the Bankruptcy Judge shall perform the duties of this subsection.
As noted above, this section was replaced by 28 U.S.C. § 156.

. Subject-matter jurisdiction ... is an Art. Ill as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. “ Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), principles of estoppel do not apply, American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17-18, 71 S.Ct. 534, 541-42, 95 L.Ed. 702 (1951), and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.

Id.