**EARTH ISLAND INSTITUTE, Todd Steiner, The American Society for the Prevention of Cruelty to Animals, The Humane Society of the United States, The Sierra Club and the Georgia Fisherman's Association, Inc., Plaintiffs–Appellees,**

**v.**

**Madeleine K. ALBRIGHT, Secretary of State, Robert E. Rubin, Secretary of The Treasury, Eileen V. Claussen, Ass't Secretary of State For The Bureau of**

---

Oceans, William M. Daley, Secretary of Commerce and Rolland A. Schmitten, Assistant Administrator for Fisheries, Defendants–Appellants.

and

National Fisheries Institute Inc., Defendant–Appellant.

Nos. 97–1085, 97–1086.

United States Court of Appeals, Federal Circuit.

June 4, 1998.

Josha R. Floum, Legal Strategies Group, Emeryville, CA, argued, for plaintiffs-appellees.

M. Alice Thurston, Atty., Appellate Section, Environment & Natural Resources Division, U.S. Dept. of Justice, Washington, DC, argued, for defendants-appellants. With her on brief were Lois J. Schiffer, Asst. Atty. Gen. Also on brief were Frank W. Hunger, Asst. Atty. Gen., Civil Division, Commercial Litigation Branch, U.S. Dept. of Justice, Washington, DC; Christiana Perry, and Albert M. Ferlo, Attys., Enviroment & Natural Resources Division; David M. Cohen, Director, and Jeffrey M. Telep, Atty., Civil Division. Of counsel were Mark A. Melnick, Atty., Civil Division, U.S. Dept. of Justice; David Blaton, Atty., Office of Legal Counsel, U.S. Dept. of State, Washington, DC; and Jason M. Patlis, Atty., National Oceanic and Atmospheric Administration, of Silver Spring, MD.

Eldon V.C. Greenberg, Garvey Schubert, Washington, DC, for defendant-appellant National Fisheries Institute, Inc.

Before RICH, NEWMAN, and RADER, Circuit Judges.

**1354**

RADER, Circuit Judge.

Earth Island Institute (Earth Island) challenged the State Department's implementation of a 1989 law designed to ensure that shrimp entering the United States were caught in trawls equipped with turtle excluder devices (TEDs). Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act of 1990, Pub.L. No. 101–162, § 609, 103 Stat. 988, 1037 (Nov. 21, 1989) (codified at 16 U.S.C. § 1537 note (1994)). On December 29, 1995, the Court of International Trade sustained Earth Island's contention that the statute applied to all nations, rather than only to countries in the Western Atlantic and the Caribbean. Accordingly, the trial court directed the State Department to issue new regulations. The State Department issued these regulations on April 19, 1996. On June 21, 1996, Earth Island filed a "motion to enforce the court's judgment," raising the issue of whether the new regulations complied with the Court of International Trade's 1995 ruling. On October 8, 1996, eighteen days after Earth Island unilaterally withdrew its motion, the trial court determined that the new regulations did not comply with its December 29, 1995 order. On November 25, 1996, the Court of International Trade denied the Government's request for a stay pending appeal and modified the October order. Because Earth Island withdrew its motion to enforce the December 29, 1995 final judgment and thereby deprived the trial court of jurisdiction, this court vacates the trial court's October 8, 1996 and November 25, 1996 orders.

### I.

Five threatened or endangered species of sea turtle inhabit American coastal waters. One of the major causes of death for adult sea turtles is drowning in shrimp trawlers' nets. Under authority provided by the Endangered Species Act, 16 U.S.C. § 1533(d) (1994), the Department of Commerce promulgated regulations in 1987 requiring American shrimp trawlers to use TEDs on their nets or limit their tow times, 50 C.F.R. § 227.72(e) (1997).

American shrimpers argued that this requirement placed them at a competitive disadvantage with trawlers based in countries without a TED requirement. Advocates for protection of endangered species also noted that sea turtles migrate great distances, crossing many national boundaries. Therefore, regulations applicable only to shrimping operations conducted in domestic waters would fail to protect many turtles. In 1989, Congress enacted a prohibition on the import of shrimp caught with technology that might adversely affect sea turtles:

> (b)(1) In general.—The importation of shrimp or products from shrimp which have been harvested with commercial fishing technology which may affect adversely such species of sea turtles shall be prohibited not later than May 1, 1991, except as provided in paragraph (2).
>
> (2) Certification procedure.—The ban on importation of shrimp or products from shrimp pursuant to paragraph (1) shall not apply if the President shall determine and certify to the Congress not later than May 1, 1991, and annually thereafter that—
>
> (A) the government of the harvesting nation has provided documentary evidence of the adoption of a regulatory program governing the incidental taking of such sea turtles in the course of such harvesting that is comparable to that of the United States; and
>
> (B) the average rate of that incidental taking by the vessels of the harvesting nation is comparable to the average rate of incidental taking of sea turtles by United States vessels in the course of such harvesting; or
>
> (C) the particular fishing environment of the harvesting nation does not pose a threat of the incidental taking of such sea turtles in the course of such harvesting.

16 U.S.C. § 1537 note (1994).

In 1991, the State Department issued regulations interpreting this ban on shrimp imports to cover shrimp taken without TEDs. *See* Notice of Guidelines for Determining Comparability of Foreign Programs for the Protection of Turtles in Shrimp Trawl Fishing Operations, 56 Fed.Reg. 1051 (1991). These regulations also limited the enforcement of the regulation to the "wider Caribbean region." *Id.* In 1992, a coalition of environmental groups led by Earth Island

challenged the limitation to the Caribbean region in the United States District Court for the Northern District of California. The Ninth Circuit affirmed that court's dismissal of the challenge for lack of jurisdiction. *See Earth Island Inst. v. Christopher,* 6 F.3d 648 (9th Cir.1993).

Earth Island then challenged the regulations in the Court of International Trade. That court ruled that the statute contained no limitation to the wider Caribbean region. *See Earth Island Inst. v. Christopher,* 913 F.Supp. 559 (CIT 1995). The court ordered the State Department to embargo "shrimp or products of shrimp wherever harvested in the wild with commercial fishing technology which may affect adversely [the endangered] species of sea turtles" by no later than May 1, 1996. *Id.* at 580. The court later denied the State Department's request for a one year stay of its order. *See Earth Island Inst. v. Christopher,* 922 F.Supp. 616 (CIT 1996).

In response to these decisions, the State Department issued new regulations requiring enforcement of section 609 on a worldwide basis. Revised Notice of Guidelines for Determining Comparability of Foreign Programs for the Protection of Turtles in Shrimp Trawl Fishing Operations, 61 Fed. Reg. 17,342 (1996). The revised guidelines require that future shipments of shrimp into the United States include either a declaration signed by the exporter attesting that the shrimp were harvested in a country with regulations comparable to those adopted by the United States or a declaration signed by both the exporter and an official of the harvesting nation's government asserting that this particular shipment of shrimp had been harvested in a manner that did not adversely affect sea turtles. *Id.* at 17,343.

On June 21, 1996, Earth Island filed with the trial court a motion "to enforce the court's judgment." Earth Island alleged that the revised guidelines did not comply with the statute and the court's December 29, 1995 order. Earth Island also applied for attorney fees. After hearing argument on the motion, the trial court offered the parties the opportunity to supplement the record with further evidence about the alleged violations of the court's earlier order. Specifically, the court sought evidence about the effect of the new State Department regulations. On September 20, 1996, Earth Island filed a letter with the trial court. After explaining that Earth Island had no further evidence, it stated:

> Plaintiffs believe that their motion to enforce the judgment raises issues of statutory construction only, and so may be decided as a matter of law. However, plaintiffs will continue their efforts to gather evidence bearing on the issue and reserve their right to challenge the government's revised interpretation of the law in a separate action. Accordingly, plainti[ffs] hereby WITHDRAW their motion to enforce the judgment.

(Emphasis in original.) Having withdrawn its motion, Earth Island left only its request for attorney fees before the trial court.

On October 8, 1996, eighteen days after Earth Island filed its letter, the trial court issued an opinion treating Earth Island's letter as a petition to withdraw, which the court denied. After refusing to allow Earth Island to withdraw, the trial court granted both the motion to enforce and the request for attorney fees. *See Earth Island Inst. v. Christopher,* 942 F.Supp. 597 (CIT 1996). The Court of International Trade later denied the State Department's request for a stay pending appeal. *See Earth Island Inst. v. Christopher,* 948 F.Supp. 1062 (CIT 1996). This appeal ensued.

## II.

On appeal, the Government argues that the Court of International Trade improperly ruled on the motion to enforce judgment. The Government argues that Earth Island's letter effected a withdrawal of its motion, rendering the question raised by the motion moot. Therefore, the Government contends, the trial court lacked jurisdiction to issue its order. *See Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies.").

 If the trial court lacked jurisdiction, then this court has "jurisdiction on appeal, not of the merits but merely for the purpose

of correcting the error of the lower court." *United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263 (1936). Accordingly, this court examines first the Government's jurisdictional contentions. Before Earth Island's motion, the trial court had fully resolved the dispute and entered final judgment, thus extinguishing the controversy before it. *See Earth Island,* 922 F.Supp. at 627. Earth Island's motion to enforce the judgment reopened the case only to consider whether the revised regulations violated the 1995 order. When Earth Island expressly withdrew its motion, nothing remained for the trial court to resolve. "There can be no doubt that an action is mooted if the plaintiff voluntarily withdraws. The conclusion is so clear that only rare circumstances will create a need to express it." 13 Charles A. Wright et al., *Federal Practice and Procedure* § 3533.2 (2d ed.1984). The controversy between the parties ceased when Earth Island withdrew its motion.

The trial court treated Earth Island's withdrawal as a petition to withdraw, which it then denied. *See Earth Island,* 942 F.Supp. at 602 n. 7. Earth Island, however, did not request permission to withdraw, but unilaterally and unconditionally withdrew its motion. Earth Island stated: "plainti[ffs] hereby WITHDRAW their motion to enforce the judgment." Earth Island's other comments about reserving its right to bring a separate action do not detract from its unilateral withdrawal. Earth Island's letter was neither an offer to withdraw nor a motion for leave to withdraw. Once Earth Island withdrew its motion, the trial court had no authority to rule upon it and should have dismissed the motion. Since the withdrawal was voluntary and unopposed, the dismissal is deemed to be without prejudice.

Earth Island supplies no authority for the apparently novel proposition that a court retains jurisdiction over a claim by refusing to allow a plaintiff's withdrawal. *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994), states that a grant of equitable relief must take account of the public interest. However, *Bonner Mall* does not support the proposition that a court may grant equitable relief after it has lost jurisdiction due to the withdrawal of a party. In *Bonner Mall,* the Supreme Court considered the propriety of vacating decisions after the parties to the case have settled. The passage cited by both Earth Island and the trial court discusses the public's interest in the development of a body of precedential opinions as weighing against a policy of routine vacatur after the parties reach a voluntary settlement. *Bonner Mall,* 513 U.S. at 26, 115 S.Ct. 386. Again, this precedent does not address the trial court's loss of jurisdiction due to withdrawal of a party.

Earth Island cites a number of cases in which courts denied plaintiffs permission to withdraw motions for summary judgment. In all these cases, however, the court simultaneously granted defendant's cross motion for summary judgment, thereby resolving the issues in dispute. *See Condit v. United Air Lines, Inc.,* 631 F.2d 1136, 1138 (4th Cir.1980); *Smith v. Travelers Indem. Co.,* 763 F.Supp. 554, 562 (M.D.Fla.1989); *Cosmopolitan Mfg. Co. v. United States,* 156 Ct.Cl. 142, 297 F.2d 546, 549 (1962); *In re White Farm Equip. Co.,* 23 B.R. 85, 93 (Bkrtcy. N.D.Ohio 1982), *rev'd on other grounds,* 42 B.R. 1005 (N.D.Ohio 1984), *rev'd,* 788 F.2d 1186 (6th Cir.1986). These cases do not address the court's loss of jurisdiction due to unconditional withdrawal of a party.

Without a live case or controversy after Earth Island withdrew its motion, the trial court lacked jurisdiction over this matter. Accordingly, this court vacates the orders of October 8, 1996 and November 25, 1996, which issued after Earth Island's withdrawal had deprived the trial court of jurisdiction.

### III.

Having determined that the trial court lacked jurisdiction to issue its order of October 8, 1996, the only issue that was properly before that court was Earth Island's application for attorney fees under either the Endangered Species Act (ESA), 16 U.S.C. § 1540(g)(4) (1994), or the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (1994).

The trial court awarded Earth Island $340,467.56 in fees, costs, and expenses. *See Earth Island,* 942 F.Supp. at 617. This award includes attorney fees incurred over

more than five years of litigation in this matter, including fees incurred in litigation conducted in the Northern District of California and Ninth Circuit, which lacked jurisdiction to consider Earth Island's challenge.

First, the trial court determined that section 609 of the 1990 Appropriations Act was an amendment to, and thus part of, the ESA. Accordingly, it awarded fees under the citizen suit provision of the ESA, 16 U.S.C. § 1540(g) (1994). *See Earth Island,* 942 F.Supp. at 609. That statute reads, in part:

> [A]ny person may commence a civil suit on his own behalf—
>
> (A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof; or
>
> (B) to compel the Secretary to apply, pursuant to section 1535(g)(2)(B)(ii) of this title, the prohibitions set forth in or authorized pursuant to section 1533(d) or 1538(a)(1)(B) of this title with respect to the taking of any resident endangered species or threatened species within any State; or
>
> (C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary.

16 U.S.C. § 1540(g)(1). When entering final judgment in such a suit, the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4).

■ Even hypothetically assuming that section 609 falls within the ESA, Earth Island's claim still could not qualify for fees and costs under these provisions. Section 609 arguably was an amendment to 16 U.S.C. § 1537, which authorizes Government activity and the expenditure of funds in support of international efforts to protect endangered species.

Section 1540(g)(4), the attorney fees provision, however, merely authorizes courts to award fees when appropriate; it does not authorize citizen suits to enforce section 1537. This suit cannot arise under either subsections (B) or (C) of section 1540(g)(1). Section 1540(g)(1)(B) allows suits to ensure the Secretary prevents domestic taking of a protected species as required by sections 1533 and 1538. Section 1540(g)(1)(C) allows suits to ensure proper listing of endangered species according to section 1533. Therefore, this suit does not arise under subsection (B) or subsection (C). 16 U.S.C. § 1540(g)(1)(A) is the only remaining possible basis in the ESA for this action.

However, subsection (A) does not authorize this suit. The Supreme Court recently held that 16 U.S.C. § 1540(g)(1)(A) cannot form the basis for suits contesting "the Secretary's maladministration of the Act." *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 1167, 137 L.Ed.2d 281 (1997). In *Bennett,* the plaintiffs attempted to use section 1540(g)(1)(A) to challenge an agency's adoption of an advisory opinion that certain activities would have affected an endangered species of fish. The court explained that if subsection (A) allowed such a suit, it "would effect a wholesale abrogation of the APA's 'final agency action' requirement." *Id.* at 1166–67. The proper grounds for and scope of the suit were governed by the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706. *See id.* at 1167. Thus, the Supreme Court has clarified that the ESA offers no independent jurisdiction to challenge a federal agency's implementation of the Act. Instead, such suits arise under the APA. Thus, the ESA does not authorize, and cannot support, an award of fees for this action. Even if section 609 were a part of the ESA, this case—a challenge to the agency's implementation of the ESA—could not arise under the ESA or gain entitlement to attorney fees under the ESA citizen suit provisions.

■ Alternatively, Earth Island asserts the APA as a basis for its suit and an entitlement to attorney fees. The Equal Access to Justice Act governs attorney fees for APA suits. *See* 28 U.S.C. § 2412(d)(1)(A) (1994); *Oklahoma Aerotronics, Inc. v. United States,* 943 F.2d 1344, 1351 (D.C.Cir.1991) ("The APA does not waive sovereign immunity for

attorney's fees, and it contains no exception to the American Rule. In order to collect, [the plaintiff] must look to [the] EAJA....").Because it erroneously awarded fees under the ESA, the trial court did not address the possibility of an award of fees under the EAJA. Accordingly, this court vacates the trial court's award of attorney fees and remands to that court for a determination of whether an award of fees under the EAJA would be appropriate.

## IV.

Because the Court of International Trade lacked the requisite jurisdiction, this court vacates the trial court's October 8, 1996 and November 25, 1996 orders. Because the ESA cannot form the basis for Earth Island's suit, this court vacates the trial court's award of attorney fees and remands for a determination of whether an award of fees under the EAJA would be appropriate.

### COSTS

Each party shall bear its own costs.

*VACATED and REMANDED.*