**In the Matter of George SASSOWER, An Attorney.**

**No. Misc. 87–107.**

United States District Court, E.D. New York.

Nov. 4, 1988.

George Sassower, pro se.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

On February 23, 1987 an order striking the name of George Sassower from the role of attorneys and counselors-at-law of the State of New York was entered in the Appellate Division, Supreme Court of the State of New York, Second Judicial Department. That order granted a motion of the Grievance Committee for the Second and Eleventh Judicial Districts (Grievance Committee) to confirm the report of a Special Referee. That report found that Mr. Sassower was guilty of the following charges of professional misconduct:

1. By a judgment of the Supreme Court, New York County, dated June 26, 1985, he was convicted of criminal contempt of court. That conviction was subsequently affirmed on September 17, 1985 by the Appellate Division, First Department. *See Raffe v. Riccobono*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1985), *appeal dismissed*, 66 N.Y.2d 915, 498 N.Y.S.2d 1027, 489 N.E. 2d 773 (1985).

2. By judgment of the Supreme Court, New York County, dated June 26, 1985, he was again convicted of criminal contempt of court and that conviction was similarly affirmed by the Appellate Division, First Department, on September 17, 1985. *See Raffe v. Feltman, Karesh & Major*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1985), *appeal dismissed*, 66 N.Y.2d 914, 498 N.Y.S. 2d 1026, 489 N.E.2d 772 (1985).

3. By judgment of the United States District Court for the Eastern District of New York, dated June 7, 1985, he was convicted of criminal contempt of court. That conviction was affirmed by the United States Court of Appeals for the Second Circuit on September 13, 1985. *See Raffe v. Citibank, N.A.*, No. 84 Civ. 305 (E.D.N. Y. June 7, 1985), *aff'd*, 755 F.2d 914 (2d Cir.1985).

4. Mr. Sassower engaged in frivolous and vexatious litigation against judges, referees, attorneys, public officials and parties who participated in certain litigation in which he was involved on behalf of a client. That litigation was conducted by him for the purpose of harassing, threatening, coercing and maliciously injuring those who were enmeshed in it.

5. Beginning in September, 1980, Mr. Sassower embarked upon a course of professional misconduct which interfered with, obstructed, and was prejudicial to the administration of justice in that he defied court orders and displayed contempt for the law and for the judicial officers who were sworn to uphold it.

6. Mr. Sassower failed to seek the lawful objectives of his client who was damaged and prejudiced by his wilful disregard of his client's instructions.

7. Mr. Sassower failed to cooperate with the Grievance Committee by failing to respond to written inquiries and by falsely misrepresenting that a court order prohibited him from responding to those inquiries.

The findings of the special referee were made after taking testimony for fourteen days at hearings of which Mr. Sassower had notice and appeared *pro se*. After review, the Appellate Division held that the evidence was overwhelming that Mr. Sassower was guilty of the misconduct charged and agreed with and confirmed the report of the referee. The order of disbarment was subsequently entered.

Upon receipt by this court of notification of his disbarment, Mr. Sassower was ordered to show cause why his name should not be stricken from its roll of attorneys. That order provoked a number of varied proceedings including: (1) an application for an Order for a Writ of Mandamus directing compliance by the United States Attorney, Andrew J. Maloney, with 18 U.S. C. § 3332, and (2) an application for an order directing that a Special Grand Jury be convened to investigate the conduct of named Nassau County Assistant District Attorneys. Mr. Sassower also submitted his objections to any proposed disbarment by this court and requested that a Master be appointed to take testimony. In that submission he states that he was "truly honored by a state disbarment" which he repudiates, contending that he was deprived of every fundamental right in the

proceedings which culminated in his disbarment. The submission also commented extensively on the integrity of many members of the judiciary, state and federal.

The Rules of the United States District Courts for the Southern and Eastern Districts of New York regulate the procedure for disciplining members of the Bar of those courts. Rule 4(d) provides:

> If it appears, after notice and opportunity to be heard, that any member of the bar of this court has been disciplined by any federal court or by the court of any state, territory, district, commonwealth or possession, the member may be disciplined by this court, in accordance with the provisions of paragraph (g).

Paragraph (g) provides that:

> ... Discipline may be imposed by this court with respect to paragraph[ ] (d) ... unless the member ... establishes by clear and convincing evidence: (1) with respect to paragraph (d) that there was such an infirmity of proof of misconduct by the attorney as to give rise to the clear conviction that this court could not consistently with its duty accept as final the conclusion of the other court; or (2) that the procedure resulting in the investigation or discipline of the attorney by the other court was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or (3) that the imposition of discipline of this court would result in grave injustice.

■ Admission to the bar of this court is available to "[a] member in good standing of the bar of the State of New York...." Rule 2(a), Rules of the United States District Courts for the Southern and Eastern Districts of New York. Although admission to the bar of this court is through the state, one might reasonably assume that the state's revocation of one's license to practice law would automatically be a disqualification to continued practice of law in this court. The assumption, while perhaps reasonable, is incorrect. In *Theard v. United States*, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957), Justice Frankfurter wrote, at page 281, 77 S.Ct. at 1276:

> While a lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route. The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included. The court's control over a lawyer's professional life derives from his relation to the responsibilities of a court.

The concept that a lawyer may have been duly found to be unfit to practice law by the state that licensed him and, being no longer licensed, continue to practice in the federal courts of that state, is, like other concepts, ghosts that are seen in the law but are elusive to the grasp.[1] The teaching

---

1. An observation made in *Selling v. Radford*, 243 U.S. 46, 37 S.Ct. 377, 61 L.Ed. 585 (1917) is, perhaps, helpful in making the concept less elusive. At page 49, 37 S.Ct. at 378, the court wrote:

> While, moreover, it is true that the two conditions, membership of the Bar of the court of last resort of a State and fair private and professional character, are prerequisites to admission here, there is a wide difference in the nature and effect of the two requirements. This follows, because the first, although a prerequisite to admission here, is ephemeral in its operation since its effect is exhausted upon admission to this Bar which it has served to secure,—a result which becomes manifest by the consideration that although the membership of the Bar of the court of last resort of a State after admission here might be lost by change of domicil from one State to another, if so provided by the state law or rule

of court, or by any other cause not involving unworthiness, such loss would be wholly negligible upon the right to continue to be a member of the Bar of this court. The second exaction, on the contrary, is not ephemeral and its influence is not exhausted when the admission based upon it is secured since the continued possession of a fair private and professional character is essential to the right to be a member of this Bar. It follows, therefore, that the personality of the member and these inherent and prerequisite qualifications for membership of this Bar are indivisible, that is, inseparable. They must, if they exist, follow the personality of one who is a member of the Bar and hence their loss by wrongful personal and professional conduct, wherever committed, operates everywhere and must in the nature of things furnish adequate reason in every jurisdiction for taking away

of *Theard* that a determination of disbarment by a state court is not conclusively binding on the federal courts, is not disobeyed by a holding that the state determination is entitled to great deference and recognition. *In re Rosenthal*, 854 F.2d 1187 (9th Cir.1988). The judgment of the state court should be recognized unless

> ... one or all of the following conditions should appear: 1. That the state procedure from want of notice or opportunity to be heard was wanting in due process; 2. that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3. that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Selling v. Radford*, 243 U.S. 46, 51, 37 S.Ct. 377, 379, 61 L.Ed. 585 (1917). It is readily apparent that Rule 4(g), set out above, was derived from *Selling*.

■ There is nothing in the record of the state proceeding or in the submission by Mr. Sassower to suggest that there was an infirmity in the proof of his misconduct or that he was deprived of procedural due process or that a grave injustice would result by the imposition of discipline by this court. Absent those conditions the judgment of the state court disbarring Mr. Sassower should be recognized. Indeed, it is the duty of this court to give effect to the findings of the state court. 243 U.S. at 51,

37 S.Ct. at 379. *See also In re Rosenthal*, 854 F.2d 1187 (9th Cir.1988).

In his response to the Order to Show Cause, Mr. Sassower requested a hearing to "show ... that the Appellate Division, Second Department deprived your affirmant of just about every federal constitutional and civilized right in such disciplinary proceeding (*Selling v. Radford*, 243 U.S. 46 [37 S.Ct. 377])." Mr. Sassower appealed the determination of the Appellate Division (125 A.D.2d 52, 512 N.Y.S.2d 203 (2d Dep't 1987)) and on July 9, 1987, his appeal was dismissed by the New York Court of Appeals on its own motion upon the ground that no substantial constitutional question was involved. *In re Sassower*, 70 N.Y.2d 691, 518 N.Y.S.2d 964, 512 N.E. 2d 547 (1987). The competence of the courts of New York State to decide federal constitutional questions is beyond dispute. Contending as he does that the New York courts erroneously applied constitutional principles, he could seek review in the Supreme Court of the United States by petition for writ of certiorari. According a presumption of correctness to the factual findings of the state court, this court is without jurisdiction to sit in review of the judgment of the Court of Appeals. Such a review can be obtained only in the Supreme Court. *In re Rosenthal*, 854 F.2d 1187, 1188 (9th Cir.1988). *See also Erdmann v. Stevens*, 458 F.2d 1205, 1211 (2d Cir.), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972).

On March 9, 1987, the United States Supreme Court suspended Mr. Sassower from the practice of law and he was directed to show cause within forty days why he should not be disbarred. *In re Disbarment of Sassower*, 480 U.S. 914, 107 S.Ct. 1365, 94 L.Ed.2d 682 (1987). By a submis-

---

the right to continue to be a member of the Bar in good standing.

Mr. Theard, following the Supreme Court's decision may well have been that person permitted to practice in the federal court despite his disbarment by the state. Given the facts in that case, the result is at least understandable. Mr. Theard forged a promissory note in 1935 when he was concededly suffering from a degree of insanity causing him to be confined to an insane asylum for several years thereafter. He practiced law for six years after his release from the asylum without any charge of misconduct

brought against him. Disbarment proceedings based upon that forgery were commenced in 1950 and in 1954, approximately 19 years after the event, he was disbarred by the Supreme Court of Louisiana. He was subsequently disbarred by a federal district court solely because of the State disbarment. Given these facts the conclusion was virtually compelled that to discipline Mr. Theard would result in a grave injustice. Cursory research failed to reveal whether Mr. Theard was reinstated by the Louisiana Court after the decision by the Supreme Court was announced.

sion dated April 10, 1987 he stated his causes, commencing as follows: "I, GEORGE SASSOWER, Esq., an honest man, come before this Court and respectfully assert that no man has ever been admitted to the bar of this Court more honest and with more integrity than your affirmant." That submission, a replication of the submission to this court, again asserts, among many other things, that he was honored by the state disbarment and comments adversely upon the integrity of the judiciary. He also requested the appointment of a Master to take testimony. On May 4, 1987, Mr. Sassower wrote to Chief Justice Rehnquist requesting that "... Your Honor's Court discharge the rule to show cause ..., until such time as a single member of the Appellate Division, Second Judicial Department is willing to swear under oath or affirm to Your Honor's Court that such Court gave good-faith obedience to the Constitution of the United States in disbarring me...." On May 18, 1987 the United States Supreme Court entered an order of disbarment. *In re Disbarment of Sassower*, 481 U.S. 1045, 107 S.Ct. 2174, 95 L.Ed.2d 831 (1987). By order of June 3, 1987, Mr. Sassower was disbarred by the United States Court of Appeals for the Second Circuit. By order dated May 13, 1987, he was disbarred by the United States District Court, Southern District of New York. The latter order adopted a fifteen page report by a United States Magistrate, dated July 23, 1987, which recommended that Mr. Sassower be appropriately disciplined.

For all of the foregoing reasons, George Sassower is disbarred from the practice of law before this court. His request for a hearing contained in his response to the Order to Show Cause is denied. In the light of the record his request for a plenary hearing is unwarranted and "is empty and manipulative rhetoric." *See George Sassower v. The Sheriff of Westchester County*, 824 F.2d 184, 190 (2d Cir.1987).

SO ORDERED.