The Debtors are directed to settle an appropriate order on ten days' notice.

**In re George SASSOWER, Debtor.**

**George Sassower, Plaintiff,**

v.

**Kenneth W. Starr, et al., Defendants.**

**Bankruptcy No. 05 B 23120(ASH).**
**Adversary No. 05–8655A.**

United States Bankruptcy Court,
S.D. New York.

Jan. 10, 2006.

George Sassower, White Plains, NY, pro se.

Attorney General of the State of New York, by Katherine E. Timon, Assistant Attorney General, New York City, for State Defendants, Eliot Spitzer, Francis T. Murphy, and Jonathan Lippman.

United States Department of Justice Michael J. Garcia, United States Attorney, by Sarah E. Light, Assistant United States Attorney, New York City, for Federal Defendants, Kenneth W. Starr, John G. Roberts, Drew S. Days, Wilfred Feinberg, Charles L. Brieant, William H. Rehnquist, and Frank H. Easterbrook.

### DECISION AND ORDER

ADLAI S. HARDIN, JR., Bankruptcy Judge.

Before me is an Order to Show Cause, issued *sua sponte* by this Court, why an adversary proceeding initiated by debtor-plaintiff George Sassower should not be dismissed. After hearing Sassower in opposition to the Order to Show Cause, I conclude that the proceeding must be dismissed on the merits because the complaint is patently frivolous and fails to state a claim against any defendant, and because the proceeding violates an injunction issued by the District Court for the Southern District of New York (Hon. Peter K. Leisure). The Order dismissing this proceeding, at the foot of this Decision, will supplement Judge Leisure's injunction to make it clear to Sassower that further such litigation is barred.

## Jurisdiction

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of referral to bankruptcy judges dated July 10, 1984 signed by Acting Chief Judge Robert J. Ward.

## Background

For a quarter of a century George Sassower, a disbarred attorney, has inundated state and federal courts across the nation with an extraordinary number of frivolous filings. Although earlier injunctions bar Sassower from seeking relief in this Court, his persistence in filing utterly baseless claims and motion practice against various public officials remains undeterred. What follows is a comprehensive history of Sassower's litigious past in the hope that future litigants and courts will be spared needless time, energy and expense. For a review of Sassower's far-flung litigation abuses in the years 1980 through 1993, I defer to District Judge Leisure's comprehensive recitation in *Sassower v. Abrams*, 833 F.Supp. 253, 256–60 (S.D.N.Y.1993).

The long and tortured history of vexatious litigation arises out of Sassower's representation of Hyman Raffe, a shareholder of Puccini. Puccini, a New York corporation, was dissolved and placed in receivership in 1980 by the New York State Supreme Court. Raffe appealed the court's order and it was unanimously affirmed by the Appellate Division, First Department.

In the early 1980s, Sassower and Raffe filed numerous motions in New York state courts attempting to relitigate the dissolution and receivership of Puccini. The state courts repeatedly denied these motions and, on at least two occasions, imposed extraordinary costs and attorney's fees. Nevertheless, Raffe and Sassower continued to commence more lawsuits adding, as defendants, the judges and officials who ruled against them. The New York courts found that their various claims were precluded under principles of *res judicata*, as well as doctrines of qualified and absolute immunity protecting public officials and judicial officers, and such orders were affirmed by the Appellate Division, First Department. *See, e.g., Raffe v. Feltman, Karesh & Major*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1st Dept.), *appeal dismissed*, 66 N.Y.2d 914, 498 N.Y.S.2d 1026, 489 N.E.2d 772 (1985).

On January 20, 1984, Sassower and Raffe brought an action in the Eastern District of New York naming the same list of Puccini defendants and adding, as defendants, several state court judges and New York State Attorney General Robert Abrams. *See Raffe v. Citibank, N.A.*, No. 84 Civ. 305 (E.D.N.Y.). On August 1, 1984, the Honorable Eugene H. Nickerson, United States District Judge, Eastern District of New York, dismissed the complaint on the grounds that (1) the claims against the private party defendants were barred by the doctrines of *res judicata* and collateral estoppel, and (2) the claims against the state court judges and Robert Abrams were barred by the Eleventh Amendment and the doctrine of absolute immunity. In addition, Judge Nickerson found that Sassower had conducted the litigation in a vexatious manner and granted defendants' motion for sanctions. On January 23, 1985, the Second Circuit affirmed Judge Nickerson's decision without opinion. *See Raffe v. Citibank, N.A.*, No. 84 Civ. 305 (E.D.N.Y. August 1, 1984), *aff'd mem.*, 779 F.2d 37 (2d Cir.1985).

Less than one month after the dismissal of the Eastern District action, Sassower and Raffe filed an action in the

Southern District of New York which named, as defendants, many of the individuals who were the subject of the lawsuit in the Eastern District. The case was assigned to Judge Conner. *See Raffe v. John Doe*, 619 F.Supp. 891 (S.D.N.Y.1985). Shortly after filing this action, Raffe and Sassower filed new actions in the New York state courts and the defendants in those actions moved the Supreme Court Special Term for a permanent injunction enjoining Raffe and Sassower from filing new lawsuits in the state courts. The New York Supreme Court subsequently granted the motion and entered an order permanently enjoining Sassower from filing any complaint or proceeding relating to Puccini dissolution in state court. *See In re Barr*, Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. January 23, 1985) (Exhibit 24); *see also In re Barr*, Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. March 11, 1986) (Exhibit 25); *In re Barr*, Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. March 1987) (Exhibit 26); *In re Barr*, Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. September 2, 1988) (Exhibit 27).

Sassower and a new actor in the litigation, Sam Polur, Esq., disregarded that order and filed at least ten actions in New York Supreme Court related to the Puccini dissolution and, thus, Sassower was the subject of several criminal contempt convictions. *See Raffe v. Riccobono*, No. 9522/85, slip op. at 6–7 (Sup.Ct. N.Y.Co. July 1, 1985) (criminal contempt conviction), *aff'd*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1st Dep't), *appeal dismissed*, 66 N.Y.2d 915, 498 N.Y.S.2d 1027, 489 N.E.2d 773 (1985) *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Raffe v. Feltman, Karesh & Major*, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1st Dep't), *appeal dismissed*, 66 N.Y.2d 914, 498 N.Y.S.2d 1026, 489 N.E.2d 772

(1985). In *In re Barr, supra*, Sassower was convicted of criminal contempt and sentenced to 30–days imprisonment. *See In re Barr*, 121 A.D.2d 324, 324, 503 N.Y.S.2d 392, 392 (1st Dep't), *appeal dismissed*, 68 N.Y.2d 807, 506 N.Y.S.2d 1037, 498 N.E.2d 437 (1986).

During this same time frame, Sassower, Raffe, and Polur filed three additional actions in this Court which asserted the same claims contained in *Raffe v. John Doe* and named most of the same defendants. The cases were assigned to Judge Conner as related actions. *See Puccini Clothes, Ltd. v. Murphy*, No. 85 Civ. 3712(WCC) (S.D.N.Y. filed May 16, 1985); *Raffe v. Riccobono*, No. 85 Civ. 3927(WCC) (S.D.N.Y. filed May 23, 1985); *Raffe v. Relkin*, No. 85 Civ. 4158(WCC) (S.D.N.Y. filed June 3, 1985).

On October 11, 1985, Judge Conner dismissed all four actions as being barred by the principles of *res judicata* and collateral estoppel. The Court stated:

> I have reviewed the complaint in this case and have compared it to the complaint filed in *Raffe v. Citibank, N.A.* On the basis of that review, I think it plain that the instant action is barred by the principles of *res judicata* and collateral estoppel set out above. The complaint in this action does no more than rehash the allegations put before Judge Nickerson. It is clear that Raffe and Sassower have merely attempted to revive issues that Judge Nickerson expressly held were without merit or barred by prior decisions in the state courts.

*Raffe v. Doe*, 619 F.Supp. at 896. The Court also awarded attorney's fees on the following grounds:

> [I]t is overwhelmingly clear that this suit is entirely without merit and that it has no basis in law or fact. More-

over, in view of Judge Nickerson's recent decision, to say nothing of the five-year history of duplicative state court proceedings, it is inconceivable that Raffe and Sassower had any legitimate purpose in instituting this action. Their only apparent aim was to harass the defendants in some desperate hope that they will eventually tire of defending lawsuits and surrender Puccini and its assets. This is nothing more than blackmail by litigation, and the Court will not tolerate it.

*Id.* at 897. Finally, Judge Conner issued an order permanently enjoining Sassower from bringing any further actions in federal court in connection with the Puccini dissolution or receivership. *Id.* at 898. The Second Circuit dismissed Sassower's subsequent appeal. *See* Nos. 85–7963, 7965, 7967, 7969 (2d Cir. March 18, 1986).

In 1987, in flagrant violation of the Court's injunction, Sassower filed another lawsuit in this District naming the same defendants, as well as adding Judge Conner and the judge who presided over Sassower's bankruptcy proceeding, the Honorable Howard Schwartzberg, as defendants. *See United States for the Benefit of George Sassower v. Sapir,* No. 87 Civ. 7135, 1987 WL 26596 (S.D.N.Y.1987). The case was originally assigned to the Honorable Charles S. Haight, United States District Judge, Southern District of New York, but after Judge Haight also was named as a defendant in the lawsuit, Judge Brieant took the case on reassignment.

On December 10, 1987, Judge Brieant dismissed the action on the grounds that Sassower's claims were frivolous and that Sassower had intentionally violated the 1985 injunction issued by Judge Conner. Judge Brieant also noted as follows:

[The] inclusion of the assigned judge as an additional defendant has the effect, and probably the purpose of disrupting the orderly judicial decisional process of this district court insofar as concerns the motion to dismiss. Plaintiff, who used to be a lawyer, must be deemed to recognize that the Amended Complaint violates the 1985 injunction, and also that Judge Haight, and for that matter Judge Conner also, are immune from this sort of litigation.

*United States for the Benefit of George Sassower v. Sapir,* 87 Civ. 7135(CSH), slip op. at 2 (S.D.N.Y. December 10, 1987) (Exhibit 23). Thus, Judge Brieant prohibited Sassower from filing any actions in the United States District Court for the Southern District of New York without prior leave of court. *Id.* at 3. ("*Sapir* order"). This order applies to "any actions" and, thus, expanded the injunction issued by Judge Conner in *Raffe v. Doe* which applied to the "Puccini related" submissions.

This pattern of frivolous and vexatious litigation resulted in Sassower's disbarment from practice in New York courts. *See In re Sassower,* 700 F.Supp. 100, 104 (E.D.N.Y.1988), *aff'd,* 875 F.2d 856 (2d Cir.1989); *Matter of Sassower,* 125 A.D.2d 52, 53–54, 512 N.Y.S.2d 203 (2d Dep't), *appeal dismissed,* 70 N.Y.2d 691, 518 N.Y.S.2d 964, 512 N.E.2d 547 (1987); *see also In re Disbarment of Sassower,* 481 U.S. 1045, 107 S.Ct. 2174, 95 L.Ed.2d 831 (1987). Moreover, in 1989, the Second Circuit dismissed the sixth appeal filed by Sassower in a one-year period and warned Sassower that, if Sassower's abuse of the judicial process continued, he would be barred from the Second Circuit. *See Sassower v. Sansverie,* 885 F.2d 9, 11 (2d Cir.1989).

After abusing the federal and state court systems in New York for almost a decade, Sassower began to institute these lawsuits outside the State of New York adding the names of the New York federal judges to the list of defendants. These lawsuits, which sought to revive the Puccini lawsuit as well as challenge the subsequent litigation defeats and sanctions, were brought in district courts in California, Maryland, Minnesota, New Jersey, Ohio and Washington, D.C. [FN2] Each district court imposed sanctions and/or injunctive relief which sought to prevent Sassower from continuing his vexatious lawsuits. Sassower also brought appeals in the courts of appeal for the Third, Fourth, Sixth, Eighth, and Ninth Circuits. [FN3]

FN2. Sassower's complaints also included allegations regarding his bankruptcy proceedings, the "plundering" of the Estate of Eugene Paul Kelly, and the incarceration of Dennis F. Vilella. However, these claims, along with all of Sassower's other claims, have been fully litigated and dismissed on the merits. *See Sassower v. Signorelli*, 99 A.D.2d 358, 472 N.Y.S.2d 702 (2d Dep't 1984); *Sassower v. Finnerty*, 96 A.D.2d 585, 465 N.Y.S.2d 543 (2d Dep't 1983), *appeal dismissed*, 61 N.Y.2d 756, 472 N.Y.S.2d 923, 460 N.E.2d 1358 (1984); *Cohen and Vilella v. Litman*, No. 89 Civ. 7049 (S.D.N.Y.1989); *In re Barr*, Index No. 01816/80 (N.Y.Sup.Ct., N.Y.Co. September 2, 1988) (Exhibit 33).

FN3. A chart outlining Sassower's history of litigation is attached as Exhibit 1 to the federal defendants' Appendix to the Motion to Dismiss.

The lawsuit filed in New Jersey, before the Honorable Nicholas H. Politan, resulted in a conviction of criminal contempt against Sassower for failure to obey court orders. *See Sassower v. Feltman*, 88 Civ. 1562(NHP) (D.N.J. October 6, 1989). Sassower, in response to the contempt conviction, instituted a second action in the New Jersey district court which named Judge Politan as a defendant. The Third Circuit determined that Sassower had filed, *inter alia*, "numerous repetitive pleadings, motions, briefs and other submissions containing frivolous legal arguments, flagrant misstatements of fact, and scurrilous allegations in these appeals and petitions for writs of mandamus/prohibition." *See Sassower v. Abrams*, No. 91–8063, 37 F.3d 1506, slip op., at 1 (3d Cir.1992) (Exhibit 15). Thus, the Third Circuit enjoined Sassower from filing any appeal, petition, motion, or pleading in the Third Circuit relating to the Puccini defendants, as well as numerous federal judges, in connection with the previously adjudicated matters. *Id.* at 4–5.

Sassower then filed two complaints in the federal district court in Minnesota. *See Sassower v. Carlson*, Civ. 4–90–511 (D.Minn. August 20, 1990); *Sassower v. Dosal*, 744 F.Supp. 908 (D.Minn.1990). In these two actions, Sassower, *inter alia*, identified a group of "racketeering defendants" including members of the Southern and Eastern Districts of New York, members of the Second and Third Circuits, a Magistrate Judge, a Bankruptcy Judge, a Chief Clerk, a United States Attorney, several Assistant United States Attorneys, the New York Attorney General, the District Attorney of Nassau County, several state judicial personnel, and counsel. The district court in *Dosal* determined that the claims were "wholly frivolous and malicious" and, thus, the complaint was dismissed for lack of subject matter jurisdiction. *Id.* at 909. Both Minnesota

actions were dismissed with prejudice. The Eighth Circuit affirmed the dismissals and issued an injunction enjoining Sassower from filing any civil action in the United States District Court for Minnesota without first obtaining leave of that court. *See Sassower v. Carlson,* 930 F.2d 583 (8th Cir.1991).

Sassower then refiled his complaint in November 1991 in the Southern District of Ohio. *See Sassower v. Mead Data Central,* Civ. 3–91–436 (S.D.Ohio) (Complaint) (Exhibit 17). In that case, Sassower alleged "criminal racketeering activity" by Judge Oakes, Judge Pratt, Judge Brieant, Judge Conner, Judge Nickerson, Judge Goettel, and others. *See* Complaint, at ¶ 9(e)(3). In addition to alleging corruption on the part of past judges who issued injunctions and other sanctions due to his vexatious litigation, Sassower sought to have the Puccini-related orders declared invalid. Complaint, at ¶ 37a. Sassower also sought to enjoin Mead Data Central, Inc. (*i.e.,* LEXIS), a computer data base company which publishes judicial opinions, from publishing or distributing certain decisions rendered against him. In February 1992, the Ohio case was dismissed. *See Sassower v. Mead Data Central, Inc.,* Civ. 3–91–436 (S.D.Ohio February 18, 1992). However, shortly thereafter, Sassower refiled the complaint naming the Magistrate Judge who had been assigned to the first Ohio complaint as a defendant. On May 13, 1992, the district court dismissed the second complaint and issued an injunction which

was similar in scope to the Eight Circuit's injunction and, thus, barred him from filing any further actions in the Southern District of Ohio. *See Sassower v. Thompson, Hine and Flory,* 92 Civ. 27 (S.D.Ohio May 13, 1992) (Exhibit 19). Sassower appealed the dismissal of both complaints and the injunction issued by the district court. The Sixth Circuit denied the appeal and enjoined him from filing or prosecuting any civil actions in the Eighth Circuit or any court in that Circuit. *See Sassower v. Mead Data Central,* No. 92–3537, 1993 WL 57469 (6th Cir. March 4, 1993) (Exhibit 21); *Sassower v. Thompson, Hine and Flory,* No. 92–3553, 1993 WL 57466 (6th Cir. March 4, 1993) (Exhibit 22).

The Court notes the Fourth and Ninth Circuits, as well as the District Court for the District of Columbia, also have issued injunctions barring suits by Sassower. *See Sassower v. Whiteford, Taylor & Preston,* No. 90–1142, slip op., 1991 WL 136589 (4th Cir. July 2, 1991) (Exhibit 16); *Sassower v. General Ins. Co.* 962 F.2d 15 (9th Cir.1992); *Sassower v. Barr,* Nos. 91–3233, 91–3302, 1992 WL 133163 (D.D.C. January 9, 1992) (Exhibit 14).

Having made the foregoing findings of fact, Judge Leisure issued an injunction barring Sassower "from filing any civil action in the United States District Court for the Southern District of New York without first obtaining prior leave from the Court."[1] Judge Leisure's injunction, which continues in effect, applies to actions removed from state courts to the Southern

---

[1] The full text of Judge Leisure's injunction reads as follows:

The Court hereby issues the following permanent injunction as to George Sassower:

(1) *ACTIONS FILED IN THE SOUTHERN DISTRICT OF NEW YORK—* George Sassower is hereby enjoined from filing any civil action in the United States District Court for the South-

ern District of New York without first obtaining prior leave from the Court. In seeking leave to file, Sassower must certify that the claim or claims he wishes to present are new claims never before raised and disposed of on the merits by any court. The action may not relate to or arise from (1) the Estate of Paul Kelly litigation, (2) Dennis F.

District of New York and actions filed in or removed to federal district courts other than the Southern District of New York.

Since 1993, Sassower's exploitation of the legal system has abated somewhat, perhaps in response to outstanding injunctions recognized and adhered to by courts in no less than *six circuits*. Among the handful of courts to issue published rulings on Sassower following the publication of

Vilella, (3) the Puccini litigation, (4) claims objecting to sanctions for which ordinary review has been exhausted, or (5) claims against any state or federal judge, officer or employee for actions taken in the course of their official duties exercised in connection with Mr. Sassower's previous litigation. He must also certify that the claim or claims are not frivolous, malicious, or taken in bad faith. The motion for leave must be captioned "Application Pursuant to Court Order Seeking Leave to File" and Sassower must cite or affix a copy of this Opinion and Order to that motion. Failure to comply strictly with these requirements will be sufficient grounds for summarily denying leave to file. Until leave from the Court is obtained, any document or motion served by Sassower is a nullity and no party need file a response thereto.

The Clerk of the Court is hereby ordered not to accept for filing any paper or proceeding or motion or new case of any kind presented by George Sassower, or naming him as a party plaintiff or petitioner, without the leave in writing first obtained from a judge or magistrate of this Court.

(2) *ACTIONS REMOVED FROM STATE COURT TO THE SOUTHERN DISTRICT OF NEW YORK*—If any civil action in which Sassower is a plaintiff is removed to the United States District Court for the Southern District of New York from state court, pursuant to 28 U.S.C. §§ 1441, 1442, 1442a, 1443, or 1444, Sassower is required to obtain leave from the Court to continue the action. Sassower must file, within 30 days from the date of removal, an "Application for Leave of Court to Continue Action." Such Application must comply with *all* of the requirements enumerated in Paragraph One of this injunction. Failure to comply strictly with these requirements will be sufficient grounds for summarily denying leave to continue the action. Until leave from the Court is obtained, any document or motion served by Sassower is a nullity and no party need file a response thereto. Until leave to continue the action is obtained, the action is stayed and the Clerk of the Court should not accept for filing any paper or motion in the removed action, other than the Notice of Removal and the Application for Leave to Continue Action.

(3) *ACTIONS FILED IN, OR REMOVED TO, FEDERAL DISTRICT COURTS OTHER THAN THE SOUTHERN DISTRICT OF NEW YORK*—Sassower is enjoined from filing any civil action in any federal district court which relates to or arises from (1) the Estate of Paul Kelly litigation, (2) Dennis F. Vilella, (3) the Puccini litigation, (4) claims objecting to sanctions for which ordinary review has been exhausted, or (5) claims against any state or federal judge, officer or employee for actions taken in the course of their official duties exercised in connection with Sassower's previous litigation. Sassower is required to annex a copy of this Opinion and Order to any pleading filed in a civil action in any federal court. Failure to comply with the terms of this injunction may be considered by such federal court to be a sufficient defense to sustain a motion to dismiss such a lawsuit and may result in summary dismissal. This injunction also applies to an action in which Sassower is a plaintiff that is removed to federal court from state court pursuant to 28 U.S.C. §§ 1441, 1442, 1442a, 1443, or 1444. If the removed action falls within the scope of the subject matter of this injunction, it will be subject to summary dismissal.

(4) This injunction does not, in any way, abrogate any past or future injunctions directed at George Sassower, but rather supplements such injunctions.

*Sassower v. Abrams*, 833 F.Supp. 253, 273–74 (S.D.N.Y.1993).

Judge Leisure's injunction is the Supreme Court of the United States. In October of 1993, the Supreme Court issued an opinion enjoining Sassower from filing petitions for *certiorari* in non criminal matters *in forma pauperis*. *In re George Sassower*, 510 U.S. 4, 114 S.Ct. 2, 126 L.Ed.2d 6 (1993) ("The order ... will allow this Court to devote its limited resources to the claims of petitioners who have not abused our process.").

In September 1993 Sassower was ordered to show cause by the Judicial Council of the Second Circuit why he should not be enjoined from filing any further judicial misconduct complaints without first obtaining leave to file. *See In re George Sassower*, 20 F.3d 42 (2d Cir.1994). The show cause order "was issued in connection with the dismissal of two judicial misconduct complaints filed by George Sassower ... [and] was prompted by Sassower's pattern of filing frivolous and vexatious judicial misconduct complaints." *Id.* at 43. After reviewing Sassower's abuses, the Judicial Council enjoined Sassower from filing "any subsequent judicial misconduct complaints in this Court or any document related to such judicial misconduct complaints without first obtaining from the Chief Judge leave to file ..." *id.* at 45 (the "Judicial Council injunction").

Sassower, undaunted and undeterred by sanctions imposed by courts in the Second Circuit, brought his campaign of harassment to the United States Court of Appeals for the Seventh Circuit in 1994. After remarking that the Northern District of Illinois, where Sassower initiated the suit, lacked even a tenuous connection to the transactions and defendants involved ("[t]he only possible explanation for the choice of venue is that this circuit has yet to bar Sassower from filing additional suits"), the Seventh Circuit held that Judge Leisure's injunction barred Sassower from pursuing his claim in any federal court. The court went on to impose additional burdens that significantly impair Sassower's access to the Seventh Circuit for adjudication of any claim, on the basis that his filings are to be treated as presumptively frivolous. *Sassower v. American Bar Ass'n*, 33 F.3d 733, 735–36 (7th Cir.1994).

Sassower marched on to the courts in the Eleventh Circuit where he was met with swift dismissals. The Eleventh Circuit Court of Appeals found that Sassower's filings were barred by Judge Leisure's injunction, but that further restrictions were warranted to prevent the squandering of judicial resources. "It is ORDERED that Sassower not be permitted to file further civil appeals in this court unless he first either pays this court's filing fee, or obtains a certificate from the district court stating that each appeal Appellant wishes to bring is not frivolous and does not contravene the terms of the injunction entered by District Judge Leisure...." *Sassower v. Fidelity & Deposit Co. of Maryland*, 49 F.3d 1482, 1483 (11th Cir.1995).

The Eastern District of Pennsylvania dismissed Sassower's most recent documented attempt (aside from the proceeding before this Court) to bend a judicial ear to his accusations of corruption and collusion. In addition to acknowledging the validity and applicability of Judge Leisure's injunction, the Eastern District of Pennsylvania ordered that Sassower "is enjoined from filing any civil action in the United States District Court for the Eastern District of Pennsylvania which relates to or arises from the Puccini litigation or claims against state or federal judges, officers or employees for actions taken in the course of their official duties exercised in connection with petitioner's previous litigation, without prior authorization of this

court." *Sassower v. Stiles*, 1997 WL 89111 (E.D.Pa. February 28, 1997).

We arrive now at Sassower's conduct before this Court, originating with an evidently false and bad faith petition for relief under the Bankruptcy Code. Sassower filed for relief under Chapter 13 of the Code on June 1, 2005.[2] His petition, schedules and proposed plan represent that he has net assets of just over $100 million (including a non-existent judgment for $100 million), almost no creditors and no income other than social security and family assistance. Sassower commenced the above-captioned adversary proceeding in the Chapter 13 case, and it is this proceeding that is now before the Court.

### The Instant Order to Show Cause

█ On September 23, 2005 Sassower filed the adversary proceeding alleging in the complaint that various federal and state judges and officials "cooked" federal books and "fixed" various courts. Named as defendants in the adversary proceeding are Kenneth W. Starr, John G. Roberts, Jr., Drew S. Days, III, Wilfred Feinberg, Charles L. Brieant, William H. Rehnquist, Frank H. Easterbrook, Francis T. Murphy, Eliot Spitzer, Jonathan Lippman, the New York Times and Citibank, N.A. Because the complaint is virtually unintelligible and therefore defies summary description, it has been set forth in full text as an Appendix at the foot of this Decision and Order. Suffice it to say that the complaint does not allege any facts demonstrating or even suggesting that any of the defendants engaged in any conduct which had any economic or other impact on Sassower or which could possibly give rise to any legal or equitable claim in favor of Sassower against any defendant. Nevertheless, in the "Wherefore" clause Sassower "demands money damage judgment, compensatory and punitive, against the defendants, jointly and severally, in the sum of one billion dollars, together with costs and disbursements of this action."

Confronted with Sassower's unfounded and outlandish conclusory accusations, and considering Sassower's apparent violation of Judge Leisure's injunction and the Judicial Council injunction, this Court, acting *sua sponte*, issued an Order to Show Cause dated October 7, 2005 why Sassower's complaint should not be summarily dismissed.[3] A hearing was held on November 1, 2005, at which time Sassower was unable to substantiate or legitimate any of the purported claims alleged in the complaint. On December 22, 2005, Sassower filed a motion to: (1) declare "null and void" this Court's *sua sponte* Order to Show Cause; (2) disqualify Bankruptcy Judge Adlai S. Hardin, Jr. by reason of having issued the above *sua sponte* Order; (3) render partial summary judgment in favor of plaintiff against Citibank, N.A. in the sum of $27,912.42; (4) render partial summary judgment in favor of plaintiff against all the defendants, jointly and severally, in the sum of $120,000 together with interest; (5) render partial summary judgment in money damages against the New York Times; (6) award partial summary judgment against all the defendants for money damages; (7) for a 18 U.S.C. § 3057 Bankruptcy Investigation; and (8) any other, further, and/or different relief

---

2. The Trustee has moved to dismiss Sassower's Chapter 13 case.

3. In a letter to this Court dated October 28, 2005, after his receipt of the Court's Order to Show Cause, Sassower wrote that "U.S. Bankruptcy Judge Adlai S. Hardin, Jr. is a dangerously corrupt federal jurist, who is engaged, on several levels, in egregious criminal activities, who must be removed from his judicial office, criminally prosecuted and sentenced to serve a term of incarceration."

as may be just and proper. The motion was heard at length by the Court on January 3, 2006, and is hereby denied in its entirety. If the motion served any useful purpose, it was to demonstrate beyond doubt that this adversary proceeding, and indeed the main bankruptcy case itself, has been initiated for the sole purpose of rehashing yet again Sassower's alleged rights with respect to the Puccini dissolution which were resolved against him in multiple state court decisions and appeals decades ago.

Because there is no viable claim alleged or even intimated in the complaint, in Sassower's written and oral response to the Order to Show Cause, or in his recent motion addressed to the Order to Show Cause, the complaint must be dismissed for failure to state a claim.

It is also evident that Sassower's complaint violates the spirit if not the letter of both the Judicial Council injunction and Judge Leisure's injunction. It is true that the Judicial Council injunction relates to "judicial misconduct complaints in this Court," referring to the Court of Appeals. But there can be no doubt from the opinion of the Judicial Council that the intention of the Judicial Council injunction was to put an end to Sassower's "pattern of filing frivolous and vexatious judicial misconduct complaints," and there also can be no doubt that Sassower's complaint in this adversary proceeding is precisely the sort of "frivolous and vexatious judicial misconduct complaints" which the Judicial Council injunction was designed to curb.

■ Judge Leisure's injunction bars Sassower from filing any civil action "in the United States District Court for the Southern District of New York" without prior leave of court. The jurisdiction of the district court comprehends and is the source of that of the bankruptcy court. Section 152(a)(1) of Title 28 states that bankruptcy judges "shall serve as judicial officers of the United States District Court established under Article III of the Constitution." The jurisdiction of the bankruptcy court is derived from that of the district court. Under 28 U.S.C. § 1334(a) and (b), the district courts have original and exclusive jurisdiction of all cases under Title 11 and original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. Section 157 of Title 28 provides that the district court may refer cases and proceedings arising under or in Title 11 cases to bankruptcy judges for the district. Because Federal jurisdiction over Sassower's bankruptcy case and this adversary proceeding is vested in the District Court under 28 U.S.C. § 1334, and merely referred under 28 U.S.C. § 157(a) to a bankruptcy judge who "serve[s] as a judicial officer[ ] of the ... District Court," Judge Leisure's injunction must be deemed applicable to an action commenced in the Bankruptcy Court. And it is perfectly clear that Judge Leisure's injunction was intended to bar frivolous and vexatious litigation by Sassower in *all* Federal courts.

■ Unfortunately, this frivolous complaint, with its baseless and outlandish conclusory accusations against the late Chief Justice of the Supreme Court of the United States, his successor Chief Justice of the Supreme Court and a host of distinguished federal and state judges and public servants, is not the latest in Sassower's attempts to relitigate his Puccini claims and harass the state and federal judges who have ruled against him. On December 28, 2005 Sassower filed a complaint in a new adversary proceeding naming as defendants Samuel A. Alito, Nicholas H. Politan, Robert Abrams, Anthony J. Scirica, Charles L. Brieant, Citibank, N.A., Kreindler & Relkin, P.C., William C. Conner, Francis T. Murphy, Wilfred Feinberg,

Feltman, Karesh, Major & Farbman, New York Times, New York Law Journal and Alberto R. Gonzales. This new complaint, to the extent that it is intelligible, alleges more of the same type of conclusory allegations of "fixing," "bribes" and "corruption" against judges, other public servants and two newspapers as he has in countless prior lawsuits. It is now evident to this Court, as it was to Judge Leisure, the Judicial Council and numerous federal and state courts, that there is no way to curb Sassower's egregious abuse of the judicial process other than an injunction backed by the prospect of contempt proceedings and possible incarceration for violation.

Accordingly, this Court's order dismissing this adversary proceeding will include an injunction barring Sassower from commencing any further litigation in this or any other federal court in the Second Circuit without prior approval of the⸱Chief Judge of the Court in which the action is proposed to be commenced. Any violation by Sassower may result in a civil or criminal contempt proceeding. This injunction, which stands on its own, supplements but does not supercede Judge Leisure's 1993 injunction and other injunctions issued by other courts. The purpose of this injunction is to make clear to Sassower that he is barred from filing any adversary proceeding in any bankruptcy court without prior court approval.

### ORDER

Upon the foregoing Decision, is it hereby

**ORDERED** as follows:

1. The complaint in this adversary proceeding is dismissed with prejudice.

2. George Sassower is hereby enjoined and barred from filing any civil action in this Court or in any Federal Court within or without the Second Circuit without first obtaining prior leave from the Chief Judge of the court in which the action is proposed to be commenced. In seeking leave to file, Sassower must certify subject to the penalties of perjury that the claim or claims he wishes to present are new claims never before raised and disposed of on the merits by any court. The action may not relate to or arise from (1) the Estate of Paul Kelly litigation, (2) Dennis F. Vilella, (3) the Puccini litigation, (4) claims objecting to sanctions for which ordinary review has been exhausted, or (5) claims against any state or federal judge, officer or employee for actions taken in the course of their official duties exercised in connection with Sassower's previous litigation. He must also certify facts showing that the claim or claims are not frivolous, malicious or taken in bad faith. The motion for leave must be captioned "Application Pursuant to Court Orders Seeking Leave to File" and Sassower must cite and annex a copy of this Decision and Order and Judge Leisure's Opinion and Order in *Sassower v. Abrams*, 833 F.Supp. 253 (S.D.N.Y. 1993). Failure to comply strictly with these requirements will be sufficient grounds for summarily denying leave to file the proposed complaint. Until an order granting leave from the Chief Judge of the court in question is obtained, any complaint, motion, discovery demand or other document served by Sassower is a nullity and no party need file a response thereto.

3. The injunction contained in paragraph 2 of this Order shall not bar Sassower's right to appeal from this Decision and Order.

### APPENDIX

In re George Sassower, Chapter 13 Debtor.

George Sassower, a Chapter 13 Debtor, Plaintiff,

v.

Samuel A. Alito; Nicholas H. Politan; Robert Abrams; Anthony J. Scirica; Charles L. Brieant; Citibank, N.A.; Kreindler & Relkin, P.C.; William C. Conner; Francis T. Murphy; Wilfred Feinberg; Feltman, Karesh, Major & Farbman; New York Times; New York Law Journal and Alberto R. Gonzales, Defendants.

No. 05–BK–23120

### Trial By Jury Demanded

Plaintiff, a Chapter 13 debtor, as and for his complaint, in this adversarial proceeding, respectfully sets forth and alleges:

1. The defendants, insofar as they are or were judges or officials of the United States or State of New York, are being sued in their "personal" capacities for "personal" misconduct.

2. There is nothing in this complaint which seeks to obtain any money damages, compensatory or punitive, against the United States or State of New York, or seeks to impose the cost of any defense representation on the United States or State of New York.

A. Any federal defense expenditures for any defense representation would have criminal consequences (31 *U.S.C.* § 1350).

B. Any N.Y. State representation or representation at N.Y. State cost expense, would be in violation of Amendment XI of the *Constitution of the United States* (*Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 [1890] ).

### AS AND FOR A FIRST CAUSE OF ACTION

3. Plaintiff is a born American citizen, a battle-starred veteran of World War II, is entitled to all the rights, privileges and immunities provided in the Constitution and Laws of the United States, including "access to the federal courts" in order to, *inter alia,* liquidate his extensive assets, contractual and otherwise.

4A. On February 29, 1988, *Geo. Sassower v. Abrams* (88Civ1012 [NHP] ) was filed in the U.S. District Court for the District of New Jersey, which was followed on April 4, 1988 by the filing in the same court of *Geo. Sassower v. Feltman,* (88Civ1562[NHP] ).

B. There was never any question that "jurisdiction" and "venue" were appropriate.

5. The defendants in *Geo. Sassower v. Abrams/Feltman* (*supra),* insofar as they were federal or New York State judges or officials were being sued in their "personal" capacities, for activities which, in most instances, were adverse to legitimate sovereign interests, such as "diverting" federal and state monies to private coffers, as a "source" of "bribes", which diversion of monies, included those of plaintiff.

6A. The defendants, *Samuel A. Alito, Nicholas H. Politan* and *Anthony J. Scirica,* as well as the federal defendants in *Geo. Sassower v. Abrams/Feltman* (*supra),* and the defendants in this action, such as *Wilfred Feinberg, Charles L. Brieant* and *William C. Conner* all *knew* and *know* that in a money damage tort action, a United States attorney, such as Alito, can *only* defend the United States, *never* any "person", and *never* anyone, even the United States, unless a 28 *U.S.C.* § 2675 "notice of claim" has been filed.

There is the irrelevant exception for revenue and custom officials, who may be sued in their own names under special circumstances and be defended by a federal attorney (28 *U.S.C.* § 547[3] ).

B. Nevertheless, with actual knowledge that the expenditures he was making were *unauthorized* by Congress, triggering a "subject matter jurisdictional" infir-

mity, rendering all merit dispositions made to be null and void, U.S. Attorney Alito appeared for some of the defendants in *Geo. Sassower v. Abrams/Feltman* (*supra*) in their own names and where no 28 *U.S.C.* § 2675 "notice of claim" existed.

C. To conceal from the Article I Congress the unauthorized federal expenditures made which, according to a named federal official were "staggering" (*New Jersey Law Journal*, July 13, 1989), U.S. Attorney Alito "cooked" his federal books, as Exhibit "A", confirms.

Exhibit "A" is a response from the *United States Department of Justice* ["USDJ"] to a *Freedom of Information Act* ["FOIA"] request and states that it has no record of such litigation.

7A. The defendants in the aforementioned action and in this action, *Robert Abrams* and *Francis T. Murphy* knew they could not be defended by a New York State attorney or at N.Y. State cost and expense as violative of Amendment XI/ Hans, triggering a "subject matter jurisdictional" infirmity and rendered all merit dispositions made to be null and void.

B. However, after being advised by Chief Judge Brieant of New York that Judge Politan of New Jersey had been "fixed" and would not address the "subject matter jurisdictional" and other lethal infirmities, albeit mandatory, New York State Attorney General ["NYSAG"] Abrams appeared for himself and others sued in their personal capacities at unconstitutional New York State cost and expense.

8A. Since the proceedings in the District Court of New Jersey were inundated with lethal "subject matter jurisdictional" infirmities, obviously Alito, Politan and Abrams knew *beforehand* that the Third Circuit Court of Appeals ["CCA3"] had

been "fixed" and would not make a *United States v. Corrick* (298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263 [1936]) disposition, albeit mandatory.

B. While Chief U.S. District Court Judge Brieant· was the prime "fixer" on behalf of *Citibank, N.A.* at the New Jersey District Court level, it was Chief U.S. Circuit Court Judge *Wilfred Feinberg* for the Second Circuit who was the "fixer" at CCA3.

9. By reason of the aforementioned *unauthorized* sovereign representations, the plaintiff was deprived of merit dispositions, which caused him substantial damages, for which he requests substantial monetary and punitive damages.

### AS AND FOR A SECOND CAUSE OF ACTION

10A. The defendant, *Alberto R. Gonzales,* the Attorney General of the United States, *knows* that U.S. Attorney Alito had expended substantial federal monies, *not* authorized by Congress and, by statute, was obligated to "immediately report to the President and Congress all relevant facts and a statement of actions taken." (31 *U.S.C.* § 1351) but has wilfully failed give obedience to such mandate, causing plaintiff damages.

B. The defendant, Gonzales, also knows that all monies payable "to the federal court", which included monies paid on plaintiff's behalf, were diverted to the coffers of Citibank and *Kreindler & Relkin, P.C.* ["K & R"] and the involvement of Feinberg and Alito in such criminal adventure, and his obligation to recapture such monies in favor of the United States, but has failed to act.

### AS AND FOR A THIRD CAUSE OF ACTION

11A. *Puccini Clothes, Ltd.,* was involuntarily dissolved at the instance of the

defendants, Citibank–K & R when, in this one instance, its illegal and unethical "estate chasing" practices went awry and it *immediately* began to engineer the larceny of its judicial trust assets, dissipating its judicial trust assets in order to "bribe" and "corrupt".

B. Eventually, *all* of Puccini's judicial trust assets were made the subject of larceny engineered by Citibank–K & R, almost all in order to "bribe" and "corrupt", leaving *nothing* for its nationwide legitimate creditors.

C. The larceny of approximately $800,000 of Puccini's assets can be attributed to the actions and activities of Alito–Politan, at substantial and *unauthorized* federal cost and expense.

12A. The initial "hard evidence" surfaced forty-two (42) months after Puccini was involuntarily dissolved when Citibank–K & R attempted to make "bribe" payments of approximately $160,000 from Puccini's judicial trust assets to the defendant, *Feltman, Karesh, Major & Farbman*, Esqs. ["FKM & F"] and $10,000 to *Rashba & Pokart* ["R & P"], and in the few months that followed the "hard evidence" reached avalanche proportions.

B. At the time the Citibank–K & R engineered larceny surfaced, there remained in cash, approximately $800,000 in the Puccini judicial trust, resulting in an agreement reached with, *inter alia*, the defendants, *Frances T. Murphy, Charles L. Brieant* and *Robert Abrams* that for the transfer to those on their behalf of Puccini's remaining cash assets as "bribes", the Citibank conspirators would be given "*Total and Complete Civil, Criminal and Disciplinary Immunity*".

C. The "*Citibank Bribes for Immunity Agreement*" was given effect by Politan by,

*inter alia*, issuing an Order of the Court which read:

"ORDERED, that the plaintiff George Sassower or anyone acting on his behalf or acting in concert or cooperation with Sassower may not file any new case, proceeding, motion or other litigation document in this Court or in the State Courts of New Jersey without specific written order of this Court. . ."

D. When permission was requested to file a Notice of Appeal from an injunction order, Politan denied the request.

E. After being "fixed", a substantially similar injunction was issued by CCA3 by Order dated February 12, 1992, in which the defendant Scirica was a panel member (*Geo. Sassower v. Abrams/Feltman*, 37 F.3d 1506–Exhibit "B").

13. The initial "hard print" publication of the "*Citibank Bribe for Total Immunity Agreement*" appears in *Raffe v. Doe* (619 F.Supp. 891 [SDNY–1985]), a decision wherein U.S. District Court Judge *William C. Conner* was openly flaunting that he was a "fixed" and "corrupt" federal jurist.

14. At no time or place has Judge Conner or any Article III federal jurist been willing to swear under oath or affirm under penalty of perjury that *Raffe v. Doe* (*supra*) has any legal validity.

15. *Raffe v. Doe* (*supra*) is inundated with infirmities, and "on its face" has an Amendment XI/Hans "subject matter jurisdictional" infirmity, which rendered all merit dispositions to be null and void.

16. Despite the absence of "subject matter jurisdiction", Judge Conner provided the Citibank conspirators with "immunity" by enjoining any action or proceedings against the Citibank conspirators by either *Hyman Raffe*, the most major stockholder-creditor in Puccini or the plaintiff.

17. In addition to the lack of "subject matter jurisdiction", which rendered all dispositions made to be null and void, Judge Conner did not have "personal" jurisdiction over plaintiff, who was not a party in *Raffe v. Doe (supra)* and who, after being threatened with incarceration for six (6) years, by the Citibank entourage, Raffe discharged plaintiff, as his attorney, months *before* the decision in *Raffe v. Doe (supra)* was rendered.

18A. The injunctions issued by Judge Conner in *Raffe v. Doe (supra)* was intended to: (a) preserve the remaining cash assets in Puccini of approximately $800,000 as "bribes" and (2) provide the Citibank conspirators with "immunity".

*However,* Raffe and plaintiff had contractually based, constitutionally protected, money judgments against *Puccini Clothes, Ltd., Eugene Dann* and *Robert Sorrentino* which could not be impaired by any state or federal judge, official or employee (Article I § 10[1], Amendment V & XIV of the *Constitution of the United States*).

19. Although the Conner and similar injunctions by N.Y. Referee *Donald Diamond* and N.Y. State Supreme Court Justice *Ira Gammerman* proved sufficient to preserve the approximately $800,000 cash in the Puccini judicial trust account, the Citibank conspirators and their stable of corrupt judges and officials could not, because of the judgment held by plaintiff, consummate the transmission of such monies as "bribes", inflicting injuries on plaintiff in their attempt.

### AS AND FOR A FOURTH CAUSE OF ACTION

20. The Citibank conspirators, along with their stable of corrupt judges and officials, despite a "reign of judicial terror", unable to consummate the transmission of the approximate $800,000 in cash in the Puccini judicial trust account, began to "divert" monies payable "to the federal court" to the coffers of Citibank and/or K & R, to serve, after "laundering", as an additional "source" of "bribes".

21. Eventually, aided and abetted by Alito and Politan they "diverted" all these federal monies to Citibank–K & R and the federal court and/or government received none of these federal monies.

22. In view of the cooperation of U.S. Alito in this "diversion" of federal monies to the coffers of Citibank–K & R and his refusal to support motions to recapture these federal monies in favor of the United States, the obligation of Gonzales was to recapture such federal monies, which included monies paid on behalf of plaintiff.

### AS AND FOR A FIFTH CAUSE OF ACTION

23. Anticipating the elevation of Brieant to be Chief Judge of the Southern District of New York ["SDNY"] on October 1, 1986, he, Murphy, Abrams and others contrived and concocted a base criminal scheme to consummate the transmission of the approximate $800,000 in the Puccini judicial trust while providing the Citibank–K & R conspirators with "immunity".

24. Pursuant to this criminal scheme, the Citibank conspirators, published in the *New York Times* and *New York Law Journal* ["NYLJ"], at Puccini's cost and expense, *fraudulent* "legal notices" which stated that *Lee Feltman,* Esq., the court-appointed receiver for Puccini would present to his "final account" for approval by N.Y. Referee Diamond, on October 30, 1986, who would then terminate the Puccini litigation by a judgment, and a discharge of Feltman and his surety, *Fidelity & Deposit Company of Maryland* ["F & D"].

25. The Feltman "final accounting" for Puccini was "phantom" and "non-existent", and even if it existed, and it did not, Referee Diamond, an at-will employee with insignificant legal powers (*NY CPLR* § 4317[b]) did not have the authority to "approve" any "accounting" by a court-appointed receiver, terminate a judicial trust proceeding, discharge a court-appointee or his surety or execute any of the other legal papers set forth in the fraudulent "legal notices".

26. The *NY Times* and *NYLJ* were made aware, confirmed and knew *before* October 30, 1986 that the "accounting" was "phantom", and that Referee Diamond did not have the authority to execute the required legal documents, but failed and refused to repudiate or correct these fraudulent "legal notice".

27. Consequently, on the eve of the consummation of this published fraud, plaintiff filed a petition in bankruptcy, which vested plaintiff's assets in the United States District Court (28 *U.S.C.* § 1334[e]) which also triggered an automatic 11 *U.S.C.* § 362.

28. As a result of such filing, a cornucopia amount of evidence of judicial corruption surfaced resulting in retaliatory measures against plaintiff and causing him substantial damages, monetary and otherwise.

### AS AND FOR A SIXTH CAUSE OF ACTION

29. The obligation of the trustee in bankruptcy, *Jeffrey L. Sapir*, Esq., was to liquidate plaintiff's assets, free of any all pre-petition restrictions.

30. However, the liquidation of plaintiff's assets by Sapir, would encroach upon the approximate $800,000 remaining in the Puccini judicial trust.

31. Thus, Brieant began to "fix" U.S. Bankruptcy Judge *Howard Schwartzberg* and Sapir, so that, *inter alia*, to preserve Puccini's remaining assets as "bribes".

32. Judge Schwartzberg attempted to resist the "fixing" activities of Brieant as best as he reasonably could be expected, until December 11, 1987.

33. On December 11, 1987, "without jurisdiction", "without notice" "without due process" and *sua sponte* Brieant issued an Order that plaintiff could not make any motions in the bankruptcy proceeding "without permission".

34. When plaintiff requested permission to file a motion, Brieant without looking at the papers or inquiring as to the nature of the motion, denied permission and threatened plaintiff with incarceration, if he ever made any request for a Puccini "accounting".

35. Because of Brieant's "fixing" activities and Sapir unable to function in view of same, the bankruptcy proceeding was terminated, with leave to file in New Jersey, all to plaintiff's damage.

### AS AND FOR A SEVENTH CAUSE OF ACTION

36. Plaintiff filed his petition in bankruptcy in the District of New Jersey, which was followed by adversary proceedings, including one to satisfy plaintiff's contractually based, constitutionally protected, money judgment against *Puccini Clothes, Ltd., Eugene Dann* and *Robert Sorrentino*. Consequently Brieant "fixed" the bankruptcy court, and then the District Court, to ignore the automatic "stay" provisions in 11 *U.S.C.* § 362 in order to preserve Puccini's remaining cash assets as "bribes".

37A. Brieant and the Citibank conspirators, then inundated those courts with *Raffe v. Doe* (*supra*) and other null and

void decisions, such as those issued by Feinberg and the Murphy court, as purportedly valid, when they knew they were null and void.

B. The fraudulent "legal notices" published in the N.Y. Times and NYLJ, as well as other publications by NYLJ were thrust upon the New Jersey federal court, all causing plaintiff damage.

### AS AND FOR A EIGHTH CAUSE OF ACTION

39. Brieant, Politan, Alito, Abrams and the Citibank conspirators, concocted a criminal scheme, at the cost and expense of the United States, to transfer the remaining $800,000 cash in the Puccini judicial trust account as "bribes".

40A. Politan, as the complainant, falsely claiming plaintiff had violated his injunction, which he did not, or permit the filing of a Notice of Appeal (28 *U.S.C.* § 1292) and then falsely claiming plaintiff did not "appear", although he did, in the civil actions issued a totally defective warrant.

b. The law was clear and is clear, as stated in *Latrobe Steel v. United Steelworkers* (545 F.2d 1336, 1343 [3rd Cir. 1976]):

> "Criminal contempt ...proceedings are separate from the actions which spawned them. If a criminal contempt action develops from a civil proceeding, it bears *a separate caption apart from the civil suit.*" [emphasis supplied].

c. After plaintiff refused to surrender to a completely invalid warrant, he had Assistant U.S. Attorney *Susan Cassell backdate* a complaint and they spent monumental sums of federal monies, which including an *unauthorized* and *unlawful* wire tap.

d. Politan, with the cooperation of Alito held plaintiff incarcerated for two (2) months, without bail, charged with a single count of non-summary criminal contempt.

e. During this two (2) month period Politan, Alito, Abrams, Brieant were able to consummate the transmission of the approximate $800,000 in Puccini's assets to serve as a "source" of "bribes"

f. As the complainant, he was disqualified to serve as the jurist in the contempt proceeding (*Young v. United States ex rel. Vuitton* (481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 [1987])), although he also acted as the jurist.

g. More than fifteen (15) years later, at monumental federal cost, the proceedings are still not finalized, since Politan–Alito having caused the successful of the $800,000 in "bribes" have no further interest in this criminal proceeding.

41. The Politan Order as it exists today, reflecting the "*Citibank Bribes for Immunity Agreement*" reads:

> "ORDERED that the plaintiff, George Sassower or anyone acting on his behalf or acting in concert or cooperation with Sassower may not file any new case, proceeding, motion or any other litigation document in this Court or in any other state and federal court in New Jersey ... [and] in the event that George Sassower or anyone acting on his behalf, shall in violation of the within Order, file without having first obtained the prior written consent of this Court, any pleading, new case, proceeding, motion or other litigation document ... then George Sassower may *immediately be held in contempt* of this Court and shall be *subject to arrest* and appropriate sanctions *without* further notice." [emphasis supplied].

WHEREFORE, plaintiff demands from the defendants, damages in the sum of one

hundred million dollars, compensatory and punitive damages.